[No. 6801–1.   Division One.   September 17, 1979.]

ELZEAR J. KUEHN, ET AL, *Appellants,* v. RICHARD K. WHITE, ET AL, *Defendants,* INTER–CITY AUTO FREIGHT, INC., *Respondent.*

*Kennedy, Moore & Twisselman* and *James D. Twisselman,* for appellants.

*Lane, Powell, Moss & Miller* and *C. William Bailey,* for respondent.

CALLOW, C.J.—The issue presented is whether the Washington rule which holds that an employer is not liable for an assault committed by an employee for his own purposes should be abandoned in favor of a rule which would impose liability on an employer when the employee injures a third party in a dispute arising out of the employment.

The facts are agreed upon by the parties. On July 23, 1976, Elzear Kuehn was driving his wife's automobile southbound on Interstate 5. At approximately 6:30 p.m., the Kuehns were a short distance south of Seattle, in the traffic lane next to the outside lane. As the Kuehns' automobile proceeded down a hill, a truck tractor–semitrailer combination in the outside lane started to pass them. The truck was owned by Inter–City Auto Freight, Inc., and

operated by Richard K. White. When the trailer of the combination pulled even with the Kuehns' automobile, the rig swerved left into the Kuehns' traffic lane. Mrs. Kuehn screamed, "He's going to crash us. He's going to crash us." Mr. Kuehn applied his brakes and drove into the lane to his left.

Thereafter, Mr. Kuehn stepped on the gas, caught up with the truck, and motioned to White to pull over onto the shoulder of the highway. White shook a fist in the direction of the Kuehns' automobile and weaved towards the Kuehns, forcing them over into the third lane. Mr. Kuehn again accelerated to catch up with the truck. White, followed by the Kuehns, drove onto the right–hand shoulder of the road. White crammed on the brakes of the truck and Kuehn had to brake hard to keep from driving into the rear of the truck. When the truck stopped, Kuehn parked behind it so that both he and Mrs. Kuehn could see the driver's door of the truck.

White got out of the cab of the truck and walked towards Kuehn's car carrying a 2–foot–long metal pipe owned by Inter–City. Mr. Kuehn got out of his car and asked White why he was carrying the pipe. White replied, "That's my equalizer." Mr. Kuehn asked White why he had attempted to force the Kuehns' automobile off of the road, to which White replied, "There is no son of a bitch going to give me the finger." White then swung the pipe at Kuehn's head, grazing the side of his face and knocking off Kuehn's glasses. As Kuehn bent over to pick up his glasses White hit him on the side of the head with the pipe, knocking Kuehn to his hands and knees, and when Kuehn tried to get up White hit him again on the head.

Mrs. Kuehn got out of the automobile and asked White, "What are you trying to do? Kill him?" White replied, "There's no son of a bitch going to give me the finger." White then got back into the truck and drove off, and Mrs. Kuehn took Mr. Kuehn to a hospital. Before this incident, White's record with his employer, Inter–City, had been good.

Later, White was convicted of assault. Mr. and Mrs. Kuehn then filed a civil action against White and Inter–City Auto Freight, Inc. Inter–City's subsequent motion for summary judgment of dismissal was granted. The Kuehns appeal.

■ A master is responsible for the servant's acts under the doctrine of respondeat superior when the servant acts within the scope of his or her employment and in furtherance of the master's business. Where a servant steps aside from the master's business in order to effect some purpose of his own, the master is not liable. *Kyreacos v. Smith,* 89 Wn.2d 425, 429, 572 P.2d 723 (1977) (murder); *Hein v. Chrysler Corp.,* 45 Wn.2d 586, 599, 277 P.2d 708 (1954) (interference with contract); *Langness v. Ketonen,* 42 Wn.2d 394, 399, 255 P.2d 551 (1953); *Westerland v. Argonaut Grill,* 185 Wash. 411, 414–15, 55 P.2d 819 (1936); *Nolan v. Fisher Co.,* 172 Wash. 267, 269, 19 P.2d 937 (1933); *Estes v. Brewster Cigar Co.,* 156 Wash. 465, 473, 287 P. 36 (1930); *De Leon v. Doyhof Fish Prods. Co.,* 104 Wash. 337, 343, 176 P. 355 (1918); *Matsuda v. Hammond,* 77 Wash. 120, 123, 137 P. 328 (1913). As stated in *Hein v. Chrysler Corp., supra* at page 600:

> An employee who willfully and for his own purposes violates the property rights of another . . . is not acting in the furtherance of his employer's business. Consequently, his employer cannot be held liable under the doctrine of *respondeat superior* for the employee's wrongful act. The same rule should apply to any tort, regardless of its nature.

*See also* Annot., 34 A.L.R.2d 372 (1954); F. Harper & F. James, *Law of Torts* § 26.9 (1956); W. Prosser, *Law of Torts* § 70 (4th ed. 1971); W. Seavey, *Handbook of the Law of Agency* § 89C (1964).

If the assault by the servant is occasioned solely by reason of the servant's ill will, jealousy, hatred, or other ill feelings, independent of the servant's duty, then the master is not liable. *E.g., Linck v. Matheson,* 63 Wash. 593, 596, 116 P. 282 (1911). To fall within the scope of employment,

the assault must be committed by authority of the employer, such authority being either expressly conferred or fairly implied from the nature of the employment and the duties incidental thereto as where the servant is authorized to maintain discipline or the character of the employment is liable to create disputes and result in breaches of the peace. An abuse or excessive exercise of the servant's authority in such situations does not relieve the master of liability. *Langness v. Ketonen, supra* at 399–400; *Brazier v. Betts,* 8 Wn.2d 549, 556–60, 113 P.2d 34 (1941).

Where the servant's intentionally tortious or criminal acts are not performed in furtherance of the master's business, the master will not be held liable as a matter of law even though the employment situation provided the opportunity for the servant's wrongful acts or the means for carrying them out. In *Kyreacos v. Smith, supra,* a Seattle police detective killed a man whom he suspected of murdering a complaining witness in a case in which the detective had arrested the decedent for a credit card forgery. The detective's conviction of first–degree murder was affirmed on appeal in *State v. Smith,* 85 Wn.2d 840, 540 P.2d 424 (1975). In the subsequent wrongful death action brought by the decedent's widow, it was held that the City of Seattle was not liable under the doctrine of respondeat superior as a matter of law and that summary judgment was appropriate. The court stated that "if a servant steps aside from his master's business and, in order to effect some purpose of his own, commits an assault, the master is not liable." *Kyreacos v. Smith, supra* at 429. The court reasoned that the commission of premeditated murder by a policeman precluded any possibility that he was acting within the scope of his employment.

Recovery against the master has uniformly been denied in those instances where a servant–truck driver and the plaintiff collided, an altercation followed, and the driver lost his temper and struck the plaintiff. F. Harper & F. James, *supra* § 26.9, at 1392 n.16; W. Prosser, *supra* § 70,

at 464. *Accord,* Restatement (Second) of Agency § 245, comment *f,* illustration 8 (1958).

The plaintiffs urge an abandonment of these enunciated principles of respondeat superior. In their stead, the plaintiffs would have us embrace the rule adopted in California. *Fields v. Sanders,* 29 Cal. 2d 834, 180 P.2d 684, 172 A.L.R. 525 (1947); *Pritchard v. Gilbert,* 107 Cal. App. 2d 1, 236 P.2d 412 (1951). In those cases involving a servant's intentional assault, the California rule extends a master's liability to include risks inherent in or created by the enterprise for the reason that the master is thought to be best able to assume and spread the risk. A risk may be said to inhere in or be created by a business when "an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business," or it is typical of the employer's business. *Rodgers v. Kemper Constr. Co.,* 50 Cal. App. 3d 608, 124 Cal. Rptr. 143, 148–49 (1975). The risks of an employer's enterprise include those faults of human nature which may surface when a servant has contact with a third party. *Carr v. Wm. C. Crowell Co.,* 28 Cal. 2d 652, 171 P.2d 5, 7–8 (1946).[1] We note that the California rule is based in large part upon section 2338 of the California Civil Code, which makes a principal liable for the wrongful acts of the agent committed in and as a part of the principal's business. We

---

[1] As stated in *Fields v. Sanders,* 29 Cal. 2d 834, 839, 180 P.2d 684, 172 A.L.R. 525 (1947), quoting from *Andrews v. Seidner,* 49 Cal. App. 2d 427, 121 P.2d 863, 864 (1942):

"Responsibility of the principal results from acts so committed even though they be contrary to the principal's explicit instructions or otherwise unauthorized, or malicious or wilful. In considering whether an unauthorized wrongful act of an agent is attributable to his principal, we cannot look to the nature of such act alone to see whether it was committed in and as part of the transaction of the principal's business, but we must consider as well the activity of the agent on behalf of the principal in connection with which the act was committed. The inquiry is not whether the wrongful act itself was authorized but whether it was committed in the course of a series of acts of the agent which were authorized by the principal. Of course, where the agent, for however brief a space of time, has ceased to serve his principal, he alone is responsible for his acts during the period of such cessation. . . ."

find no comparable statutory directive in Washington and decline to impose a rule, the ramifications of which would be far–reaching and which would rearrange, across the state, the responsibility of employers for the conduct of their employees. Such a redirection of social policy is, more appropriately, the function of the legislature.[2]

■ A party is entitled to summary judgment when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Balise v. Underwood,* 62 Wn.2d 195, 381 P.2d 966 (1963). Considering all of the evidence submitted and the reasonable inferences therefrom in the light most favorable to the nonmoving party, we must determine if reasonable people might reach different conclusions from the evidence and inferences therefrom. If so, summary judgment must be denied. CR 56(c); *Jacobsen v. State,* 89 Wn.2d 104, 108–09, 569 P.2d 1152 (1977). Whether a tortious act was one performed within the scope of the servant's employment for which the master would consequently be held liable is a determination which necessarily depends upon the particular circumstances and facts of the case. This question is ordinarily one for the trier of

---

[2]*See Ira S. Bushey & Sons, Inc. v. United States,* 276 F. Supp. 518 (E.D.N.Y. 1967), *aff'd,* 398 F.2d 167 (2d Cir. 1968). In *Sandman v. Hagan,* 261 Iowa 560, 154 N.W.2d 113 (1967), at page 569, we find:

> We are aware of the so–called modern trend to find liability in this class of cases on the basis that such wrongs are committed by the employee only because of the employment situation, and that since the employer has the benefit of the enterprise as between two innocent third parties, he is better able to bear the risk of loss. If he cannot altogether avoid such wrongs, he can at least minimize them. In those cases it is argued that a general sense of fairness requires that the employer, as the person interested and benefited by the business, rather that the persons who have no concern in or control over it, should bear the burden of such wrongs as incidental to such business. See Penas v. Chicago, M. & St. P. Ry. Co., 112 Minn. 203, 127 N.W. 926 . . .; Harper, Torts, section 291, page 640; 45 Harvard Law Review 342. If employer liability is to be extended this far, we believe it should come from the legislature, and do not find that this concept has substantial support in judicial decisions.

fact, although certain fact patterns may establish as a matter of law that the master is not liable. *See Kyreacos v. Smith, supra;* Restatement (Second) of Agency § 228, comment *d* (1958).

Here, as a result of White's driving, the Kuehns attempted to catch up with White's truck. Both then drove off the road. White then assaulted Kuehn because of his personal anger towards Kuehn and not because of any intent to serve the employer.

The judgment is affirmed.

FARRIS and RINGOLD, JJ., concur.