[No. 6822–2–II.   Division Two.   August 20, 1985.]

NANCY HENDERSON, *Respondent,* v. PENNWALT
CORPORATION, *Appellant.*

548

*Michael E. Cavanaugh* and *Preston, Thorgrimson, Ellis & Holman,* for appellant.

*Laura L. Jaeger,* for respondent.

PETRICH, J.—Defendant, Pennwalt Corporation (Pennwalt), appeals a judgment, entered upon a jury verdict, finding it liable to plaintiff on the basis of sexual discrimination and slander. Pennwalt assigns error, *inter alia,* to the court's instructions regarding Pennwalt's liability for acts of sexual harassment and slander committed against plaintiff, Nancy Henderson, by one of its supervisors. We reverse and remand for a new trial.

Henderson was employed by Pennwalt in 1978 and for several years was the only female employee of the department in which she worked. In April 1982, she brought suit against Pennwalt alleging sex discrimination in violation of RCW 49.60, and slander. The bulk of her complaints cen-

tered on the conduct of her immediate supervisor. At trial, she presented evidence that, over a continuous period of time since her employment, she had been the subject of sexual harassment and slander by her immediate supervisor, a foreman.

However, the evidence conflicted as to whether the management of Pennwalt was aware, or should have been aware, of the egregious conduct by the supervisor and, if so, whether Pennwalt took proper remedial measures. Based upon this conflicting evidence, Pennwalt contends it was entitled to have the jury instructed that Pennwalt could not be held liable for sexual harassment of Henderson by her supervisor unless such harassment was imputed to Pennwalt. We agree.

■ Creation of a hostile work environment by sexual harassment is a form of discrimination based upon sex and, as such, is actionable under the Law Against Discrimination, RCW 49.60. *Glasgow v. Georgia–Pacific Corp.*, 103 Wn.2d 401, 405, 693 P.2d 708 (1985).[1] In *Glasgow,* the court held that in order to establish a sexual harassment case resulting from a hostile work environment, a plaintiff–employee must prove the existence of the following elements: (1) the harassment was unwelcome; (2) the harassment was because of gender; (3) the harassment affected the terms or conditions of employment; and (4) the harassment is imputed to the employer. *Glasgow,* 103 Wn.2d at 406–07. With respect to the fourth element, imputation, the court stated:

> Where an owner, manager, partner or corporate officer personally participates in the harassment, this element is met by such proof. To hold an employer responsible for the discriminatory work environment created by a plaintiff's supervisor(s) or co–worker(s), the employee must show that the employer (a) authorized, knew, or should have known of the harassment and (b) failed to take rea-

---

[1]This case does not present a quid pro quo sexual harassment situation where an employer requires sexual consideration from an employee as a quid pro quo for job benefits. *Glasgow,* 103 Wn.2d at 405.

sonably prompt and adequate corrective action. This may be shown by proving (a) that complaints were made to the employer through higher managerial or supervisory personnel or by proving such a pervasiveness of sexual harassment at the workplace as to create an inference of the employer's knowledge or constructive knowledge of it and (b) that the employer's remedial action was not of such nature as to have been reasonably calculated to end the harassment.

*Glasgow*, 103 Wn.2d at 407. In the present case the trial court instructed the jury that any act or omission of the supervisor was the act of Pennwalt, and that Pennwalt is liable for the acts of its supervisory employees with respect to sexual harassment regardless of whether Pennwalt knew or should have known of such acts.[2] As noted above, *Glasgow* expressly rejected the strict liability standard embodied in the court's instructions[3] and adopted the standard

---

[2]Instruction 10 provided:

"The defendant, Pennwalt, is a corporation and is the employer as that term is used in these instructions. A corporation can act only through its employees and agents. Any act or omission of James Ockfen, Paul Endquist, Orval High and other Pennwalt supervisors, is the act or omission of Pennwalt."

"Instruction 11 provided:

"An employer is responsible for its acts and those of its supervisory employees with respect to sexual harassment and discrimination regardless of whether the specific acts complained of were authorized or even forbidden by the employer and regardless of whether the employer knew or should have known of their occurrence."

[3]The trial court apparently based its instructions on the federal Equal Employment Opportunity Commission's (EEOC) interpretative guidelines for Title VII, § 703 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–z(a)(1) (1982), which set forth the EEOC's view that an employer is strictly liable for sexual harassment by its supervisors whether or not it has knowledge, actual or constructive, and irrespective of whether the alleged harassment is of the "quid pro quo" or "hostile environment" type. 29 C.F.R. § 1604.11(c); *see Henson v. Dundee*, 682 F.2d 897, 913 (11th Cir. 1982) (Clark, J., concurring in part, dissenting in part). Notwithstanding the fact that the Washington State Human Rights Commission has by regulation determined that it will generally follow interpretations of the sex discrimination provisions of Title VII, including part 1604 of 29 C.F.R. (see WAC 162–30–010), and noting that interpretations of Title VII are only instructive and not binding, the *Glasgow* court declined to follow the EEOC's promulgated interpretative guidelines. *Glasgow*, 103 Wn.2d at 406 n.2. We note in all fairness that the trial court was without benefit of *Glasgow*.

proposed by Pennwalt.[4] Attempting to hurdle the obstacle now placed in her path by *Glasgow,* plaintiff contends that (1) the trial court ruled that the supervisor was actually a managing agent of Pennwalt, and (2) the evidence established that plaintiff complained of the supervisor's conduct to higher managerial personnel of Pennwalt and that no remedial action was taken, either of which obviates the need, under *Glasgow,* for the court to give an imputation instruction. We disagree with both contentions.

First, plaintiff's claim that the court as a matter of law ruled that the supervisor was a managing agent of Pennwalt is misplaced. The court simply held that so far as treating the supervisor as an adverse witness subject to interrogation by leading questions under former CR 43(b), now ER 611(c), the supervisor was a managing agent.

■ Second, notwithstanding that the record contains evidence to support the conclusion that higher managing personnel of Pennwalt had been informed of the supervisor's misconduct and yet failed to take remedial measures, there is also evidence to the contrary. Pennwalt introduced sufficient evidence which, if believed, established that the actions of the supervisor were neither authorized by nor known to higher management of Pennwalt. "Each party is entitled, when the evidence warrants it, to have his theory of the case submitted to the jury under appropriate and properly requested instructions." *Logue v. Swanson's Food, Inc.,* 8 Wn. App. 460, 463, 507 P.2d 1204 (1973); *Elmer v. Vanderford,* 74 Wn.2d 546, 445 P.2d 612 (1968). Because of the conflicting evidence on whether management was aware of the hostile environment created by the supervisor's sex-

---

[4]Pennwalt's proposed instruction 7 provided:

"Sexual harassment is a form of discrimination because of sex. The defendant Pennwalt is liable for sexual harassment of plaintiff by her supervisors or co-workers only if you find that Pennwalt higher management knew or failed to take prompt remedial action. Sexual harassment is unwelcome verbal conduct of a sexual nature that is directed at plaintiff because of her sex and affects a term or condition of her employment. Plaintiff bears the burden of proving that she has been sexually harassed and that Pennwalt higher management knew or should have known of the harassment and failed to take prompt remedial action."

ual harassment, Pennwalt was entitled to have its proposed instruction 7 submitted to the jury. The court's instructions 10 and 11 amounted to a directed verdict for plaintiff on the issue whether the supervisor's sexual discrimination was imputed to Pennwalt. Clearly, under *Glasgow*, the trial court erred by giving instructions 10 and 11 and refusing to give Pennwalt's proposed instruction 7. Accordingly, we reverse the judgment of sexual discrimination and remand for a new trial on this claim.

■ We now address whether the court erred in its instructions pertaining to the agency issue on plaintiff's claim of slander. Although the jury found on the same facts the existence of both sexual harassment and slander, the two are separate causes of action and are governed by different principles of law. Generally, in order to hold an employer vicariously liable for the tortious acts of its employees, it must be established that the employee was acting in furtherance of the employer's business and within the course and scope of employment when the tortious act was committed. *Kuehn v. White,* 24 Wn. App. 274, 277, 600 P.2d 679 (1979). Whether an employee's tortious act was performed in furtherance of the employee's business and within the course and scope of employment is generally a question for the trier of fact. *Kuehn,* 24 Wn. App. at 280–81; *Sanders v. Day,* 2 Wn. App. 393, 397, 468 P.2d 452 (1970). Here, there is evidence that higher management of Pennwalt was aware of the supervisor's ongoing slander of the plaintiff and yet failed to remedy the situation, which supports an inference that such slander was authorized and thus within the scope of the supervisor's employment. However, as with the sexual harassment claim, there is also sufficient evidence to the contrary to warrant giving the issue of agency to the trier of fact for decision. Yet the court's instruction 10[5] amounted to a directed verdict on this issue. Because Pennwalt proposed an appropriate

---

[5]See footnote 2 for the text of instruction 10.

instruction,[6] the trial court erred by taking the issue of agency from the jury. Accordingly, we reverse the judgment of slander and remand for a new trial on this claim.

We find no merit to Pennwalt's remaining assignments of error. However, we address for guidance those issues that are likely to arise upon retrial.

Pennwalt contends the trial court erred by refusing to exclude evidence of conduct outside the relevant limitation period of 2 years for the slander claim, RCW 4.16.100, and 3 years for the sexual harassment claim, RCW 4.16.080(2). Somewhat related is Pennwalt's argument that it was entitled to a limiting instruction, pursuant to ER 105, to the effect that though certain events might be considered in support of the discrimination claim if they occurred within a 3–year period from the commencement of the lawsuit but beyond a 2–year period, such events could not be considered in support of the slander claim. We disagree.

Evidence of discriminatory treatment occurring before the limitations period is admissible to show a pattern of illegal conduct, purpose, or motivation with regard either to independent violations that occur after the limitation period or to continuing violations that began before and continue after the limitations period. *See United Air Lines, Inc. v. Evans,* 431 U.S. 553, 557–58, 52 L. Ed. 2d 571, 97 S. Ct. 1885 (1977); *Lamphere v. Brown Univ.,* 685 F.2d 743, 747 (1st Cir. 1982); *Held v. Gulf Oil Co.,* 684 F.2d 427,

---

[6]Pennwalt proposed the following instruction:

"The defendant Pennwalt Corporation is sued as the principal and the plaintiff claims that [the supervisor] was acting as an agent. The defendant Pennwalt denies that [the supervisor] was acting as an agent and was acting within the scope of authority when he allegedly slandered and sexually harassed plaintiff.

"If you find that [the supervisor] was the agent of the defendant Pennwalt and was acting within the scope of authority, then any act or omission of [the supervisor] was the act or omission of the defendant.

"If you do not find that [the supervisor] was acting as the agent of the defendant or within the scope of authority, then the defendant is not liable.

"An agent is acting within the scope of authority if the agent is engaged in the performance of duties which were expressly or impliedly assigned to the agent by the principal or which were expressly or impliedly required by the contract of employment."

430 (6th Cir. 1982). Here, plaintiff alleged and presented evidence that she had been the subject of continuous sexual discrimination since the beginning of her employment at Pennwalt in 1978. The court did not err by admitting evidence of discriminatory treatment occurring before the limitation period for the purpose of establishing a continuous pattern of illegal conduct.

Further, although under ER 105 Pennwalt may have been entitled to an instruction that evidence of discriminatory conduct occurring before the imitation period was admissible only for the purpose of the sex discrimination claim and could not be considered for the slander claim, Pennwalt's proposed instruction 14[7] was not such a limit-

---

[7]Pennwalt's proposed instruction 14 provided:

"It is the duty of the court to instruct you as to the measure of damages. By instructing you on damages the court does not mean to suggest for which party your verdict should be rendered.

"If your verdict is for the plaintiff, then you must determine the amount of money which will reasonably and fairly compensate the plaintiff for such damages as you find were proximately caused by the actions of the defendant.

"If you find that defendant Pennwalt Corporation discriminated against plaintiff because of sex or sexually harassed plaintiff, you should consider the following:

"The proved mental anguish and emotional distress experienced and reasonably certain to be experienced in the future.

"The proved reasonable value of necessary medical care, treatment and services received and those reasonably certain to be required in the future.

"Damages for sexual harassment or sexual discrimination may not be awarded for conduct occurring prior to April 21, 1979 unless you find by a preponderance of the evidence that plaintiff did not have actual or constructive knowledge of that conduct until after April 21, 1979.

"If you find the defendant Pennwalt Corporation liable for slander, you should consider the following:

"The proved, actual harm to the plaintiff's reputation in the Pennwalt plant.

"The emotional distress proved to have been caused by the slanderous statement.

"Damages for slander may not be awarded for conduct prior to April 21, 1980 unless you find from a preponderance of the evidence that plaintiff did not have actual or constructive knowledge of the conduct until after April 21, 1980.

"The burden of proving damages rests with the plaintiff and it is for you to determine whether any particular element has been proved by a preponderance of the evidence.

"Your award must be based upon evidence and not upon speculation, guess or conjecture.

ing instruction.

■ Proposed instruction 14 pertains only to damages and does not address whatsoever any limited purposes regarding the admissibility of evidence. The failure to give an instruction is not error when there is no request for the instruction. *State v. Rhinehart,* 92 Wn.2d 923, 602 P.2d 1188 (1979). Thus, because Pennwalt did not propose a proper limiting instruction, the court did not err in failing to give one.

■ Pennwalt contends next that the court erred by refusing to instruct that damages could not be awarded for any sex discrimination which occurred more than 3 years before the filing of the lawsuit, or for any slander which occurred more than 2 years before the filing of the lawsuit.[8] The statute of limitations is an affirmative defense and its elements must be proved by the party asserting it. *Haslund v. Seattle,* 86 Wn.2d 607, 547 P.2d 1221 (1976). Where a part of plaintiff's claim for damages is barred by the statute of limitations and a part of it is not, the defendant pleading the statute as an affirmative defense has the burden of specifically proving which portion of plaintiff's damages are barred by the statute. Failure to so prove will result in a complete failure of the affirmative defense. *Fulle v. Boulevard Excavating, Inc.,* 20 Wn. App. 741, 743–44, 582 P.2d 566 (1978); *see also Alston v. Bitely,* 252 Ark. 79, 477 S.W.2d 446, 458 (1972); *Earl v. Clark,* 219 N.W.2d 487, 491 (Iowa 1974); *Golden v. Lerch Bros.,* 203 Minn. 211, 281 N.W. 249, 253 (1938); *Holdner v. Columbia Cy.,* 51 Or. App. 605, 627 P.2d 4, 10 (1981); *Furrer v. Talent Irrig. Dist.,* 258 Or. 494, 466 P.2d 605, 617–18 (1970); 51 Am. Jur. 2d, *Limitation of Actions* § 483, at 939 (1970 & Supp. 1985).

---

"The law has not furnished us with any fixed standards by which to measure pain, suffering, or disability. With reference to these matters you must be governed by your own judgment, by the evidence in the case, and by these instructions."

[8] See Pennwalt's proposed instruction 14 at footnote 7.

The statute of limitations is an affirmative defense . . . And the burden of proof is on the defendant to sustain the defense. If the defense is partial only, barring only a part of the damage, defendant has the burden of proving what part of the damage occurred before the running of the limitation period. The obligation to segregate the damage should fall upon the wrongdoer and not upon the person he has harmed.

(Footnotes omitted.) *Furrer v. Talent Irrig. Dist.*, 258 Or. at 518.

Pennwalt argues that plaintiff testified during direct examination to a continuous course of sexual harassment from the first day on the job in 1978, and that she may have known of defamatory statements as early as March of 1980. Thus, Pennwalt asserts there is evidence of discriminatory conduct occurring more than 3 years before the commencement of the action, and evidence of slanderous conduct occurring more than 2 years before the filing of the lawsuit. This evidence, Pennwalt contends, was sufficient to present a jury question on whether portions of the total damages plaintiff suffered from each claim were time barred. We disagree.

Although plaintiff testified to several events that may have been time barred for the purposes of damages, she also testified that she did not begin to experience any real damages until after she endured many incidents of discrimination, and that all her major damages occurred within the limitation period. Pennwalt did not offer or attempt to elicit any evidence to prove that plaintiff did, indeed, suffer actual damages that are time barred. In light of Pennwalt's failure to present evidence that specific portions of plaintiff's actual damages are time barred, we hold that Pennwalt did not meet its burden regarding the statute of limitations, and the court properly refused to give Pennwalt's proposed instruction 14. *See Fulle v. Boulevard Excavating, Inc.*, 20 Wn. App. at 744.

■ Pennwalt contends next that the court erred by

refusing to give its proposed instructions 9, 9a, and 10,[9] all of which pertain to defenses to defamation actions. Pennwalt contends its proposed instruction 9 should have been given, arguing that at least one of the foreman's alleged slanderous statements was only a "pure" expression of opinion based upon nondefamatory facts and therefore not actionable under section 566 of the Restatement (Second) of Torts.[10] We disagree. If a direct statement of facts would be defamatory, then a statement of an opinion which implies the existence of those false facts is also defamatory and capable of supporting an action for defamation. *Benjamin v. Cowles Pub'g Co.*, 37 Wn. App. 916, 684 P.2d 739 (1984). *See* Comment, *Defamatory Opinions and the Restatement (Second) of Torts*, 75 Mich. L. Rev. 1621, 1623 (1977). We are satisfied that the statement Pennwalt contends is a "pure" expression of opinion implies the existence of false facts and would be defamatory if it were a direct statement. Further, ordinary persons hearing the statements would not perceive them to be "pure" expres-

---

[9]Pennwalt's proposed instruction 9 provided:

"You are instructed that a statement of opinion is slanderous only if the statement implies that the opinion is based on undisclosed defamatory facts. If the opinion is accompanied by a statement of nondefamatory facts upon which it is based, so that the recipient can draw his or her own conclusions, the statement is not slanderous."

Pennwalt's proposed instruction 9a provided:

"You are instructed that the asking of a question concerning conduct of the plaintiff is not slanderous. You are further instructed that a statement of intention to find out whether certain matters are true is not slanderous. You are further instructed that statements about the plaintiff made only to the plaintiff are not slanderous."

Pennwalt's proposed instruction 10 provided:

"A statement, which may otherwise be considered slanderous, does not give rise to liability if the speaker correctly or reasonably believes the statement is information that another person sharing a common interest with the speaker is entitled to know."

[10]The Restatement (Second) of Torts § 566 (1976) provides:

"§ 566. Expressions of Opinion

"A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion."

sions of opinions. *See Benjamin v. Cowles Pub'g Co.*, 37 Wn. App. at 923. Thus, the trial court did not err in refusing to give Pennwalt's proposed instruction 9.

Pennwalt contends its proposed instruction 9a should have been given, arguing that many of the alleged defamations were in the form of a question and that under section 558 of the Restatement (Second) of Torts,[11] questions are not defamatory because they are not statements of fact. We find nothing in section 558 of the Restatement, or any other section, which states that the phrasing of a defamatory comment as a question precludes liability. As Prosser states, "[t]he form of the statement is not important, so long as the defamatory meaning is conveyed; . . ." W. Prosser, *Torts* § 111, at 741 (4th ed. 1971). Statements often take the form of rhetorical questions. The trial court correctly instructed that "[t]he meaning of a communication is that which the recipient correctly, or mistakenly but reasonably, understands that it was intended to express."[12] Thus, the trial court did not err by refusing Pennwalt's proposed instruction 9a.

Pennwalt contends its proposed instruction 10 should have been given, arguing that under section 596 of the Restatement (Second) of Torts,[13] the alleged slander-

---

[11]The Restatement (Second) of Torts § 558 (1976) provides:

"§ 558. Elements Stated

"To create liability for defamation there must be:

"(a) a false and defamatory statement concerning another; ·

"(b) an unprivileged publication to a third party;

"(c) fault amounting at least to negligence on the part of the publisher; and

"(d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication."

[12]The trial court's instruction 17.

[13]The Restatement (Second) of Torts § 596 (1976) provides:

"§ 596. Common Interest

"An occasion makes a publication conditionally privileged if the circumstances lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that there is information that another sharing the common interest is entitled to know."

ous statements were qualifiedly privileged because they were made by one supervisor to other supervisors and were related to plaintiff's ability to perform her job. Although we agree that statements of evaluation of plaintiff's job performance by one supervisor to other supervisors may be qualifiedly privileged, we do not agree that any of the supervisor's statements to other supervisors in this case are qualifiedly privileged because they were not evaluations of plaintiff's job performance, nor did they convey information that the other supervisors would be entitled to know. Further, even were we to find that certain of the allegedly slanderous statements were qualifiedly privileged, we would also find an abuse of the privilege. Comment *a* to section 596 of the Restatement (Second) of Torts states:

> The privilege may be abused and its protection lost by the publisher's knowledge or reckless disregard as to the falsity of the defamatory matter (see §§ 600–602); by the publication of the defamatory matter for some improper purpose (see § 603); by excessive publication (see § 604); or by the publication of defamatory matter not reasonably believed to be necessary to accomplish the purpose for which the occasion is privileged. (See § 605A).

*See Bender v. Seattle,* 99 Wn.2d 582, 601–02, 664 P.2d 492 (1983). We believe that each of the above cited reasons for finding an abuse of the privilege is present in this case. Thus, the trial court did not err by refusing Pennwalt's proposed instruction 10.

Pennwalt next contends that the court erred by failing to instruct that in order for plaintiff to establish a hostile work environment sex discrimination case, she must prove that the discrimination was because of her gender. We find no merit to this contention as the court's instructions 12, 13, 14, 15, and 23 clearly and adequately instructed the jury on this issue.[14]

---

[14]For example, the court's instruction 14 provided:

"You are instructed that an employer discriminates because of sex in employment when it intentionally treats employees of one sex differently from employees of the other sex in terms of conditions of employment."

The court's instruction 15 also provided:

Finally, Pennwalt contends the court erred by excluding evidence of Henderson's intimate relationship with another coworker, arguing that such evidence was relevant as to the truth of some of the foreman's statements regarding her sex life and promiscuity, as well as to Henderson's motives for filing the lawsuit and the effect the relationship may have had on the physical and mental suffering she experienced during that time period. Pennwalt also argues that the trial court improperly misled it into believing that such evidence would be admissible and that, based upon this, Pennwalt had committed itself during opening argument to proving the existence and ramifications of the relationship. We disagree with both of these contentions.

First, the admission or refusal of evidence lies largely in the sound discretion of the trial court, and we will reverse a trial court's refusal of evidence only upon a showing that it manifestly abused that discretion. *Maehren v. Seattle*, 92 Wn.2d 480, 488, 599 P.2d 1255 (1979), *cert. denied*, 452 U.S. 938 (1981). Here, sufficient evidence regarding the relationship was introduced for Pennwalt to argue each of the points it sought to prove, and any further evidence on this subject was either irrelevant, ER 401, or too prejudicial, ER 403.

Second, the court clearly warned Pennwalt that it might prevent questioning on this issue during trial if things "got out of hand" and, therefore, Pennwalt was on notice that it took a risk by broaching this issue during its opening statement. Pennwalt has not shown an abuse of discretion in refusing to admit further evidence of this relationship so as to warrant a reversal of the trial court's ruling.

Because upon retrial the order, manner, and type of evidence presented may substantially differ from that of the first trial, we decline to address Pennwalt's remaining

---

"The plaintiff has the burden of proving that one of the reasons she was treated differently was because of her sex, and that she should prevail if this factor made a difference in determining whether or not plaintiff was treated differently than the male employees at Pennwalt."

assignments of error pertaining to those issues.

Judgment is reversed and remanded for new trial consistent with this opinion.

WORSWICK, C.J., and ALEXANDER, J., concur.