[No. 30867-0-I. Division One. October 25, 1993.]

JAMES W. THOMPSON, ET AL, *Appellants*, v. THE EVERETT CLINIC, *Respondent*.

*Kurt Lichtenberg,* for appellants.

*Warren E. Babb* and *Lane Powell Spears Lubersky,* for respondent.

GROSSE, J. — James and Nancy Thompson appeal a summary judgment dismissing their lawsuit for damages, arising out of James Thompson's medical examination and treatment occurring at The Everett Clinic. The action was brought against Dr. Kenneth Nakata, a staff physician and shareholder of The Everett Clinic, and The Everett Clinic itself. Dr. Nakata is not a part of this appeal.

In August of 1986, James Thompson was experiencing back pain and bladder problems. He went to The Everett Clinic (Clinic) for examination and treatment. He was examined by Dr. Nakata. During the exam by Dr. Nakata, Thompson was told certain tests were necessary because of alleged irregularities in the prostate exam. Thompson was told a sperm sample was required and the normal procedure was for Dr. Nakata to manually obtain it. Dr. Nakata proceeded to manually stimulate Thompson to ejaculation.

Approximately 2½ years later, on the evening of January 20, 1989, another patient treated by Dr. Nakata complained to the executive director of the Clinic about alleged inappropriate sexual behavior by the doctor. The Clinic acted immediately to determine if the allegation was true. Upon investigation, it was discovered Dr. Nakata engaged in improper sexual contact with approximately 100 to 200 patients during a period of 2½ years at the Clinic.

Separate from this action, Dr. Nakata was tried and convicted on a number of counts of sexual assault. He admitted his masturbation of patients was not medically necessary, and was performed for his own personal gratification. Dr. Nakata admitted his behavior was secretive and outside the scope of any medical treatment he was to render to a patient.

The Thompsons allege the trial court erred when it held the Clinic was not liable under theories of respondeat superior or vicarious liability. Further, the Thompsons claim the court erred in determining there were no issues of material fact regarding the negligent hiring or supervision of Dr. Nakata.

■ Both parties agree that no Washington court has fully examined respondeat superior liability in the context of a physician's sexual contact with a patient. The Thompsons and the Clinic cite numerous cases from other jurisdictions on the issue. There are cases cited which favor each party. The cardinal question posed by this case is whether the Clinic is liable on the theory of respondeat superior for damages arising out of Dr. Nakata's sexual misconduct. The basic rule of the doctrine of respondeat superior is set forth in the case of *Kuehn v. White*, 24 Wn. App. 274, 277, 600 P.2d 679 (1979). In *Kuehn* the court stated:

> A master is responsible for the servant's acts under the doctrine of respondeat superior when the servant acts within the scope of his or her employment and in furtherance of the master's business. Where a servant steps aside from the master's business in order to effect some purpose of his own, the master is not liable.

*See also Kyreacos v. Smith*, 89 Wn.2d 425, 429, 572 P.2d 723 (1977); *Westerland v. Argonaut Grill*, 185 Wash. 411, 414-15, 55 P.2d 819 (1936); *Hayes v. Far West Servs., Inc.*, 50 Wn. App. 505, 506, 749 P.2d 178, *review denied*, 110 Wn.2d 1031 (1988); *Hardy v. State*, 38 Wn. App. 399, 685 P.2d 610 (1984).

In order to hold an employer vicariously liable for the tortious acts of its employees, it must be established that the employee was acting in furtherance of the employer's business and that he or she was acting within the course and scope of employment when the tortious act was committed. *Henderson v. Pennwalt Corp.*, 41 Wn. App. 547, 552, 704 P.2d 1256 (1985).

In particular, where an employee commits an assault in order to effect a purpose of his or her own, the employer is not liable. *Kyreacos v. Smith*, 89 Wn.2d at 429; *Blenheim v. Dawson & Hall, Ltd.*, 35 Wn. App. 435, 440, 667 P.2d 125, *review denied*, 100 Wn.2d 1025 (1983). The *Kuehn* case recognizes that although the question of whether an employee's conduct is within the scope of the employment is

ordinarily for the jury, certain fact patterns may, as a matter of law, relieve the employer of liability. *Kuehn v. White*, 24 Wn. App. at 280-81.[1]

██ The test for determining whether the employee was within the course of his/her employment is stated as

> whether the employee was, at the time, engaged in the performance of the duties required of him by his contract of employment; *or* by specific direction of his employer; *or*, as sometimes stated, *whether he was engaged at the time in the furtherance of the employer's interest.*

*Dickinson v. Edwards*, 105 Wn.2d 457, 467, 716 P.2d 814 (1986) (quoting *Elder v. Cisco Constr. Co.*, 52 Wn.2d 241, 245, 324 P.2d 1082 (1958)). The court emphasized the importance of the benefit to the employer in applying the test. *Dickinson*, 105 Wn.2d at 468.[2]

The other side of the "within the scope" argument is found in *Simmons v. United States*, 805 F.2d 1363 (9th Cir. 1986),[3] which cites to the Washington case of *Smith v. Leber*, 34 Wn.2d 611, 209 P.2d 297 (1949). In *Simmons*, under the Federal Tort Claims Act, the government was held liable to Ms. Simmons who brought the action because her Indian health service counselor wrongfully engaged her in a sexual relationship. The court stated there was no question that the sexual involvement of a mental health professional with a

---

[1] In *Peck v. Siau*, 65 Wn. App. 285, 827 P.2d 1108, *review denied*, 120 Wn.2d 1005 (1992), a student and his parents sued a school district for negligence in hiring, retaining, and supervising Siau, a school librarian. Siau and the student engaged in acts of oral sex in secluded areas of the auditorium and the library. In *Peck v. Siau, supra*, the court stated that apparently Peck did not assert a theory of respondeat superior against the school district because Siau's sexual conduct was not within the scope of his employment (citing *Kuehn v. White*, 24 Wn. App. at 277 (collecting Washington cases); *John R. v. Oakland Unified Sch. Dist.*, 48 Cal. 3d 438, 769 P.2d 948, 256 Cal. Rptr. 766 (1989) (collecting cases nationally)).

[2] Apparently, the *Dickinson* court sought to avoid a quagmire of exceptions based on employer involvement by its emphasis on the benefit to the employer rather than on the control or involvement of the employer.

[3] This case has been disagreed with by *John R. v. Oakland Unified Sch. Dist., supra*, and *Wood v. United States*, 760 F. Supp. 952 (D. Mass. 1991), *aff'd*, 995 F.2d 1122 (1st Cir. 1993).

client is a breach of duty and malpractice under Washington law. The court went on to state the government's liability for the counselor's conduct depends upon whether the conduct was within the scope of his employment.

> Washington agency law has long held that a master cannot excuse himself when any "authorized act was improperly or unlawfully performed"[,] *De Leon v. Doyhof Fish Products Co.*, 104 Wash. 337, 343, 176 P. 355, 357 (1918), nor can he excuse himself when an unauthorized act is done in conjunction with other acts which are within the scope of duties the employee is instructed to perform. *Pierson v. United States*, 527 F.2d 459, 464 (9th Cir. 1975); *Smith v. Leber*, 34 Wash.2d 611, 623, 209 P.2d 297, 303 (1949).

*Simmons v. United States*, 805 F.2d at 1369. The court deferred to the district court which found the sexual relationship to be an unauthorized act but done in conjunction with other acts inside the scope of the employee's duties. The Thompsons argue Dr. Nakata's sexual assault of James Thompson happened in conjunction with an "authorized" examination and therefore the employer should be held liable.

 We hold the better view to be that of *Kuehn*, which states:

> Where the servant's intentionally tortious or criminal acts are not performed in furtherance of the master's business, the master will not be held liable as a matter of law *even though the employment situation provided the opportunity for the servant's wrongful acts or the means for carrying them out.*

(Italics ours.) *Kuehn*, 24 Wn. App. at 278. This rule sets forth that a tort committed by an agent, even if committed while engaged in the employment of the principal, is not attributable to the principal if it emanated from a wholly personal motive of the agent and was done to gratify solely personal objectives or desires of the agent.

██ The Thompsons contend that even if we do not find liability under a strict interpretation of the respondeat superior theory, this court should adopt an "enterprise liability" approach[4] to the doctrine of respondeat superior. This court

---

[4] This theory would adopt the inherent risk doctrine which holds an employer liable for an employee's conduct, which although not within the employee's scope of employment, was still within the risks that inure in the employer's enterprise.

has rejected similar requests in *Kuehn*, 24 Wn. App. at 279-80, and in *Hayes v. Far West Servs., Inc.*, 50 Wn. App. at 509, which indicated there have been no cases since *Kuehn* indicating acceptance of the "enterprise liability" theory. We reject it here as well.

In summary, Dr. Nakata's tortious sexual assault should not be attributable to the Clinic. The assault emanated from Dr. Nakata's wholly personal motives for sexual gratification. There is no reason the assaultive act can be considered to have been done in furtherance of the Clinic's business, or cloaked with some apparent authority.

The Thompsons also argue the trial court erred in finding there were no issues of material fact regarding the alleged negligent hiring and/or supervision of Dr. Nakata by the Clinic. The Thompsons claim summary judgment was improperly granted to the Clinic on this cause of action because the evidence and inferences therefrom, viewed most favorably to them, *may* lead some reasonable jurors to differing conclusions. The basis for the Thompsons' claims stems from an affidavit filed in the case on James Thompson's behalf by Dr. Reinking, an expert psychologist from Arizona. Reinking concluded the Clinic should have done more when it hired Dr. Nakata, and supervised him, especially in the way of psychological testing to determine if he had any character flaws.

At deposition, Reinking admitted he never reviewed Dr. Nakata's application for employment or any of the letters of recommendation supplied to the Clinic. He did not talk to the former teachers and doctors who spoke to the Clinic before Dr. Nakata was hired. Reinking also conceded he could not specifically state whether additional psychological testing would have alerted the Clinic to any potential behavioral problems. Reinking made similar concessions regarding a survey the Clinic regularly sent to all its patients regarding the medical care received in its facility. He could not say for certain that a questionnaire, reconstructed as he would have specified, would have identified any potential problems with Dr. Nakata either.

■ Negligent supervision of an employee is a recognized cause of action. *See Focke v. United States*, 597 F. Supp. 1325, 1348 (D. Kan. 1982); 57 C.J.S. *Master and Servant* § 560 (1948); Restatement (Second) of Agency § 216 (1958); Restatement (Second) of Torts § 317 (1965). An employer is not liable for negligently supervising an employee whose conduct was outside the scope of the employment unless the employer knew, or in the exercise of reasonable care should have known, the employee presented a risk of danger to others. *Peck v. Siau*, 65 Wn. App. at 294 (citing Restatement (Second) of Torts § 317(b)(ii)); *see also Scott v. Blanchet High Sch.*, 50 Wn. App. 37, 44, 747 P.2d 1124 (1987), *review denied*, 110 Wn.2d 1016 (1988).

With respect to negligent supervision, an employer may be held liable for acts beyond the scope of employment if it had prior knowledge of the dangerous tendencies of its employee. *La Lone v. Smith*, 39 Wn.2d 167, 171, 234 P.2d 893 (1951); *John Does v. CompCare, Inc.*, 52 Wn. App. 688, 694, 763 P.2d 1237 (1988) (citing *Simmons v. United States*, 805 F.2d 1363 (9th Cir. 1986)), *review denied*, 112 Wn.2d 1005 (1989). Here, there was no prior knowledge of Dr. Nakata's behavior by the Clinic or any of its shareholders or staff.

■ At summary judgment, the Thompsons failed to offer any substantial evidence to establish the existence of a genuine issue of material fact as to whether the Clinic knew or should have known, or failed to exercise reasonable care in failing to know of the inappropriate sexual conduct of Dr. Nakata. As the party opposing a summary judgment, the Thompsons must submit competent testimony setting forth specific facts, as opposed to general conclusions to demonstrate a genuine issue of material fact.

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

CR 56(e). Broad generalizations and vague conclusions are insufficient to resist a motion for summary judgment.

A nonmoving party in a summary judgment may not rely on speculation, argumentative assertions that unresolved factual issues remain, or in having its affidavits considered at face value; for after the moving party submits adequate affidavits, the nonmoving party must set forth specific facts that sufficiently rebut the moving party's contentions and disclose that a genuine issue as to a material fact exists.

*Seven Gables Corp. v. MGM/UA Entertainment Co.,* 106 Wn.2d 1, 13, 721 P.2d 1 (1986).

It is clear the trial court properly concluded there was no competent evidence suggesting the Clinic breached a duty to exercise ordinary care in the hiring or supervising of Dr. Nakata.

The decision of the trial court is affirmed.

WEBSTER, C.J., and AGID, J., concur.

Reconsideration denied December 3, 1993.

Review denied at 123 Wn.2d 1027 (1994).