[No. 12152-6-III.   Division Three.   March 31, 1994.]

MICHELLE MAY BRATTON, ET AL, *Respondents,* v. TREY CALKINS, *Defendant,* DEER PARK SCHOOL DISTRICT NO. 414, *Appellant.*

*Philip J. Van de Veer* and *Evans, Craven & Lackie, P.S.; John C. Perry,* for appellant.

*Richard C. Eymann* and *Feltman, Gebhardt, Eymann & Jones P.S.; Joan L. Antonietti,* for respondents.

SWEENEY, A.C.J. — From the spring of her high school junior year until she was a freshman in college, Michelle Bratton had a sexual relationship with Trey Calkins, her junior high school science teacher and senior high school softball coach. In 1987, Michelle and her parents, Jerry and Kim Bratton, sued Mr. Calkins and Deer Park School District, alleging Mr. Calkins and the school district were negligent. Prior to trial, the school district moved for partial summary judgment on the issue of respondeat superior. The court granted the motion, holding as a matter of law, a sexual relationship between a teacher and a student is not within the scope of a teacher's employment. The matter proceeded to trial; the jury returned a verdict finding both Mr. Calkins and the school district separately negligent. Following the verdict, the Brattons moved to amend the partial summary judgment order, arguing the school district was vicariously liable for Mr. Calkins' conduct under the doctrine of respondeat superior. Based upon the evidence

presented at trial, the court granted the motion and ruled the school district had respondeat superior liability as a matter of law. The school district appeals. We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1985, Michelle, then age 17, was in her junior year at Deer Park High School. In the spring, she signed up for the girls' softball team. With Mr. Calkins' assistance, Michelle became a teaching assistant for his junior high school science class. Their relationship quickly became personal. At the junior high school, Michelle and Mr. Calkins talked about where to meet and formulated cover stories in case they were caught together.

At the end of the 1985 school year, the relationship became sexual. Mr. Calkins often touched Michelle during his science class. According to Michelle, they had sexual relations on and off school grounds. Michelle's parents did not know of the sexual relationship and encouraged her to spend time with Mr. Calkins.

In the spring of 1986, Michelle moved in with Mr. Calkins, his wife and children. The sexual relationship continued. Several weeks before Michelle's graduation, Carl Maw, the Superintendent of Deer Park School District, received information from another teacher that the relationship between Michelle and Mr. Calkins might be intimate.[1] He met separately with Michelle and Mr. Calkins; both denied any inappropriate relationship. Mr. Maw concluded none existed.

In the winter of 1986, Michelle attempted suicide. On January 2, 1987, Michelle and her parents (the Brattons) brought this action against Mr. Calkins and the school district. By amended complaint, the Brattons alleged the school district was negligent in failing to: control, supervise and regulate extracurricular activities; properly investigate or take corrective measures; and anticipate dangers and

---

[1]The trial record indicates the intimate relationship between Mr. Calkins and Michelle did not go unnoticed by other teachers who reported the improper contact to the school principal. There were also reports of other improper teacher-student contacts.

take precautionary measures. The complaint further alleged Mr. Calkins acted negligently and that both he and the school district were liable for alienation of affections and violation of the Brattons' civil rights, 42 U.S.C. §§ 1983, 1985(3) and 1986.

In 1989, the school district moved for partial summary judgment to preclude liability under the doctrine of respondeat superior. The court granted the motion concluding that

> as a matter of law, . . . any improper conduct engaged in by the Defendant Calkins *was outside the scope of said Defendant's employment with Deer Park School District*, and that as to said conduct the Doctrine of Respondeat Superior will not be available to plaintiffs herein as a theory of liability and/or recovery against Deer Park School District.

(Italics ours.) Accordingly, the issue of whether the school district had respondeat superior liability was not presented to the jury.

In 1990, the school district moved for summary judgment on the issues of alienation of affections, and the Brattons' claims under 42 U.S.C. §§ 1983, 1985(3) and 1986. The court granted the motion as to the §§ 1985(3) and 1986 claims and the alienation of affection claim, but denied dismissal of the § 1983 claim.

Following a 4-week trial, the jury awarded Michelle $571,815.98, but determined she was 29 percent at fault. The jury apportioned 31 percent of fault to the school district and 40 percent to Mr. Calkins. As a result, Michelle was awarded $177,262.95 against the school district and $228,726.39 against Mr. Calkins. The jury further determined Mr. Calkins and the school district were negligent as to Mr. and Mrs. Bratton and that Mr. Calkins had violated their civil rights. The award in favor of Mr. and Mrs. Bratton totaled $264,318 and fault was apportioned as follows: the Brattons 50 percent, Mr. Calkins 30 percent and the school district 20 percent. The jury also awarded Mr. and Mrs. Bratton $1,300,000 punitive damages against Mr. Calkins. The total of the school district's separate liability to Michelle and her parents totaled $230,126.55.

Following the verdict, the Brattons filed a motion to "Amend to Conform to Trial Evidence, Reverse Respondeat Superior Ruling of December 20, 1989 Pursuant to CR 54(b), and Enter Judgment for the Entire Jury Verdict Against Both Defendants". They argued the school district should be held vicariously liable for Mr. Calkins' negligence under the doctrine of respondeat superior because evidence presented at trial supported a finding Mr. Calkins was acting within the scope of his employment.

On December 19, 1991, the court concluded the December 1989 partial summary judgment order was not a final order under CR 54(b) and was subject to revision at any time prior to entry of final judgment. The court reversed its position on the partial summary judgment and ruled, as a matter of law, the school district was vicariously liable for the negligent acts of Mr. Calkins. The damage award against the school district was increased by $308,022.14, the amount of Mr. Calkins' liability to Michelle ($228,726.39) and to Mr. and Mrs. Bratton ($79,295.75). The school district appeals.

### CLASSIFICATION OF MOTION

Initially, the school district contends the Brattons' motion to amend the verdict was a motion for a directed verdict and therefore was not timely. It asserts the motion could not be one for judgment notwithstanding the verdict because the jury did not decide the issue of respondeat superior.

It makes no substantive difference whether the procedural mechanism for the trial court to arrive at its result was a motion for summary judgment (CR 56), a motion for directed verdict (CR 50(a)), or a motion for judgment notwithstanding the verdict (CR 50(b)). The issue before us is the same: whether, as a matter of law, Mr. Calkins acted within the scope and course of his employment by having a sexual relationship with a student. The court's 1989 partial summary judgment order did not state there was no "just reason for delay" and did not expressly direct entry of judgment. CR 54(b). The order therefore was subject to revision at any time before final judgment was entered. CR 54(b).

RESPONDEAT SUPERIOR

██ Whether an employee was acting within the scope of his or her employment is an issue of fact which may be considered under the principles of summary judgment. *Dickinson v. Edwards*, 105 Wn.2d 457, 466-67, 716 P.2d 814 (1986). Summary judgment is appropriate if, drawing all reasonable inferences in favor of the nonmoving party, the affidavits and depositions before the trial court demonstrate no genuine factual issue as to whether the employee was acting within the scope of his or her employment. *Dickinson*, at 467. An employer, however, may be relieved from liability as a matter of law. *Kuehn v. White*, 24 Wn. App. 274, 280-81, 600 P.2d 679 (1979); *see Kyreacos v. Smith*, 89 Wn.2d 425, 429-30, 572 P.2d 723 (1977) (if the jury could reach only one conclusion, scope of employment may be determined as a matter of law).

The school district argues there is no respondeat superior liability because the sexual relationship between Mr. Calkins and Michelle was not similar or incidental to his teaching duties and only furthered Mr. Calkins' personal interest. *Kuehn*, at 280-81; *Kyreacos*, at 429 (commission of premeditated murder by policeman precludes possibility he was acting within scope of employment). The school district notes that other jurisdictions have declined to impose vicarious liability on school districts for the sexual misconduct of teachers. *John R. v. Oakland Unified Sch. Dist.*, 48 Cal. 3d 438, 769 P.2d 948, 256 Cal. Rptr. 766 (1989); *Randi F. v. High Ridge YMCA*, 170 Ill. App. 3d 962, 524 N.E.2d 966 (1988); *Bozarth v. Harper Creek Bd. of Educ.*, 94 Mich. App. 351, 288 N.W.2d 424 (1979).

The Brattons argue a material issue of fact exists on the claim of respondeat superior because activities took place on school property. *Scott v. Blanchet High Sch.*, 50 Wn. App. 37, 747 P.2d 1124 (1987), *review denied*, 110 Wn.2d 1016 (1988). Relying on *Simmons v. United States*, 805 F.2d 1363 (9th Cir. 1986), they further argue vicarious liability should be imposed on public policy grounds, when as here an employer negligently permits inappropriate activity to

occur. *Lyon v. Carey*, 533 F.2d 649 (D.C. Cir. 1976); *Stropes v. Heritage House Childrens Ctr. of Shelbyville, Inc.*, 547 N.E.2d 244 (Ind. 1989); *Marston v. Minneapolis Clinic of Psychiatry & Neurology, Ltd.*, 329 N.W.2d 306 (Minn. 1982).

A master is liable for the acts of a servant committed within the scope or course of his or her employment. *Dickinson*, at 466. If the servant "steps aside from the master's business in order to effect some purpose of his own, the master is not liable." *Kuehn*, at 277. The test is

> whether the employee was, at the time, engaged in the performance of the duties required of him by his contract of employment, *or* by specific direction of his employer; *or*, as sometimes stated, *whether he was engaged at the time in the furtherance of the employer's interest.*

*Dickinson*, at 467 (quoting *Elder v. Cisco Constr. Co.*, 52 Wn.2d 241, 245, 324 P.2d 1082 (1958)); *Smith v. Leber*, 34 Wn.2d 611, 624, 209 P.2d 297 (1949). The court in *Dickinson* emphasized the importance of the benefit to the employer. If an employee acts without the knowledge or approval of the employer, or in violation of the employer's instructions, liability is determined by examining whether the employee was acting within the scope of his implied or apparent authority. *Smith*, at 623-24.

In *Kuehn*, the issue was whether an employer was liable for an intentional assault committed by an employee driving the employer's truck. The court concluded the assault was motivated by personal anger and did not further the interest of the employer. "An employee who willfully and for his own purposes violates the property rights of another . . . is not acting in the furtherance of his employer's business." *Kuehn*, at 277 (quoting *Hein v. Chrysler Corp.*, 45 Wn.2d 586, 600, 277 P.2d 708 (1954)). Ruling the employer had no liability for the assault, the court stated that when a servant's intentionally tortious or criminal acts are not in furtherance of the master's business, the master will not be liable, as a matter of law, even though "the employment situation provided the opportunity for the servant's wrongful acts or the means for carrying them out." *Kuehn*, at 278.

A contrary result was reached in *Simmons v. United States, supra.* There, the United States Court of Appeals for the Ninth Circuit applied Washington law and held a social worker was acting within the scope of his employment when he engaged in a sexual relationship with a patient during a counseling session. The court reiterated that "Washington agency law has long held that a master cannot excuse himself when . . . an unauthorized act is done in conjunction with other acts which are within the scope of duties the employee is instructed to perform." *Simmons*, at 1369. Relying on *Dickinson*, the court stated "acts in violation of company policy, negligent acts performed contrary to instructions, and acts 'forbidden, or done in a forbidden manner,' may create employer liability." *Simmons*, at 1369 (quoting *Dickinson*, at 470).

■ ■ Recently, in *Thompson v. Everett Clinic*, 71 Wn. App. 548, 860 P.2d 1054 (1993), Division One of this court addressed the issue of whether a medical clinic could be held vicariously liable for a doctor's sexual contacts with his patients. There, the physician admitted his conduct was secretive, was performed for his own personal gratification, and was outside the scope of any medical treatment. The court refused to follow *Simmons* — instead, it adopted the rationale of *Kuehn. Thompson*, at 553. The court held an employer would be vicariously liable for the tortious acts of its employees if (1) the employee was acting in furtherance of the employer's business, and (2) he or she was acting within the course and scope of employment when the tortious act was committed. *Thompson*, at 551 (citing *Henderson v. Pennwalt Corp.*, 41 Wn. App. 547, 552, 704 P.2d 1256 (1985)). The court stated

> a tort committed by an agent, even if committed while engaged in the employment of the principal, is not attributable to the principal if it emanated from a wholly personal motive of the agent and was done to gratify solely personal objectives or desires of the agent.

*Thompson*, at 553. Finding the doctor's conduct emanated from wholly personal motives for sexual gratification, the

court concluded "[t]here is no reason the assaultive act can be considered to have been done in furtherance of the Clinic's business, or cloaked with some apparent authority." *Thompson*, at 554.

In *Peck v. Siau*, 65 Wn. App. 285, 827 P.2d 1108, *review denied*, 120 Wn.2d 1005 (1992), a high school librarian engaged in sexual acts with a student on school grounds. The boy's parents sued the teacher and the school district. Division Two of this court noted that the student had not asserted a theory of liability based on respondeat superior and commented, "the apparent reason being that [the librarian's] sexual conduct was not within the scope of his employment." *Peck*, at 287 (citing *Kuehn v. White, supra; John R. v. Oakland Unified Sch. Dist., supra*).

Here, in reversing its prior summary judgment order, the trial court found, as a matter of law, Mr. Calkins' sexual relationship with a student was within the scope of his employment.[2] The court attached significance to three facts: (1) the sexual relationship began merely a month after Mr. Calkins and Michelle met; (2) there was a disparity of power in the relationship which was described as being abusive in the context of a student-teacher, teacher-coach context; and (3) the contacts that occurred up to the point of sexual intercourse were due to Michelle's status as a teacher's assistant. In reaching this decision, the court recognized it had initially concluded a teacher's sexual relationship with a student was of no benefit to the school district and was outside the intended scope of a teacher's employment.

■ The trial court was correct in its initial reasoning. A sexual relationship between a teacher and a student does not benefit the employer and is not within a teacher's scope of employment. We agree with the analysis set out in *Thompson*

---

[2]The court stated that "[t]he evidence that was adduced at trial indicates that a lot of the initial contact, the grooming, the flirting, the fondling, and the alleged acts of sexual contact . . . occurred on school property. In conjunction with him being a teacher. On school property. And that a lot of the conduct after — after softball practice was done in conjunction as being a coach. That is different than a mere affording of the opportunity."

and the assumption made by the court in *Peck*. A personally motivated sexual relationship between a teacher and a student does not further the employer's interest. The relationship was the result of Mr. Calkins' wholly personal motives and was done solely to gratify his personal objectives and desires. *Thompson*, at 553. Even if his employment provided the opportunity for the wrongful acts, his intentional tortious actions should not be attributable to the school district.

Our ruling is also in accord with other jurisdictions. In *John R.*, a 14-year-old junior high school student was sexually molested at a teacher's apartment while participating in an officially sanctioned, extracurricular school tutoring program. The issue presented was whether the school district should be held vicariously liable. The court noted the "historical and perhaps still prevailing point of view declines to impose vicarious liability in such circumstances." *John R. v. Oakland Unified Sch. Dist.*, 48 Cal. 3d 438, 448, 769 P.2d 948, 256 Cal. Rptr. 766, 771 (1989) (citing *Gambling v. Cornish*, 426 F. Supp. 1153 (N.D. Ill. 1977) (municipality not liable for abduction and rape by police officers); *Jeffrey E. v. Central Baptist Church*, 197 Cal. App. 3d 718, 243 Cal. Rptr. 128 (1988) (church not liable for sexual abuse of minor by Sunday school teacher); *Rita M. v. Roman Catholic Archbishop*, 187 Cal. App. 3d 1453, 232 Cal. Rptr. 685 (1986) (archbishop not liable for sexual relations between seven priests and minor parishioner); *Alma W. v. Oakland Unified Sch. Dist.*, 123 Cal. App. 3d 133, 176 Cal. Rptr. 287 (1981) (school district not liable for rape of student by janitor); *Boykin v. District of Columbia*, 484 A.2d 560 (D.C. 1984) (school district not liable for sexual assault on student by teacher); *Bozarth v. Harper Creek Bd. of Educ.*, 94 Mich. App. 351, 288 N.W.2d 424 (1979) (district not liable for sexual assault on student by teacher); *see Kimberly M. v. Los Angeles Unified Sch. Dist.*, 215 Cal. App. 3d 545, 263 Cal. Rptr. 612 (1989) (5-year-old kindergarten student sexually molested by teacher; school district not liable based on respondeat superior).

In *John R.*, the court noted the principal justification for the imposition of respondeat superior liability is that the "employer may spread the risk through insurance and carry the cost thereof as part of his costs of doing business.' " *John R.*, at 450 (quoting *Johnston v. Long*, 30 Cal. 2d 54, 64, 181 P.2d 645 (1947)). In light of that policy, the court considered whether liability *should* be imposed. The court articulated and rejected three reasons for the imposition of liability on a master for the risks incident to an enterprise.[3] Recognizing that "untoward consequences could flow from imposing vicarious liability on school districts", the court stated the better approach is to hold school districts to the exercise of due care and subject them to liability only for their own direct negligence. *John R.*, at 451.

Accordingly, our imposition of vicarious liability on the school district would be "far-reaching and . . . would rearrange, across the state, the responsibility of employers for the conduct of their employees." *Kuehn v. White*, 24 Wn. App. 274, 280, 600 P.2d 679 (1979). Such a ruling would deter districts from authorizing "extracurricular and/or one-on-one contacts between teachers and students" and would "induce districts to impose such rigorous controls on activities of this nature that the educational process would be negatively affected." *John R.*, at 451. Further, imposition of vicarious liability on a school district may make insurance harder to obtain. *John R.*, at 451. Any needed redirection of social policy is more appropriately the function of the Legislature. *Kuehn*, at 280.

In sum, we hold the court erred in reversing its partial summary judgment order. The Deer Park School District is not vicariously liable under the doctrine of respondeat superior for the intentional tortious actions of Mr. Calkins.

---

[3]The court stated that (1) liability tends to provide a spur toward accident prevention; (2) liability tends to provide greater assurance of compensation for accident victims; and (3) liability tends to provide reasonable assurance that accident losses will be broadly and equitably distributed among the beneficiaries of the enterprises that entail them. *John R.*, at 451.

The trial court's decision to the contrary is reversed and the jury's verdict reinstated.

MUNSON and SCHULTHEIS, JJ., concur.

Review denied at 124 Wn.2d 1029 (1994).