# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ANGELA EVANS, | No. 47612-6-II |
| Appellant, | |
| v. | PUBLISHED OPINION |
| TACOMA SCHOOL DISTRICT NO. 10, | |
| Respondent. | |

MAXA, J. – Angela Evans appeals the dismissal of her multiple claims against the Tacoma

School District (District) arising from a sexual relationship between her minor daughter JM, a

student at a District school, and Jesse Brent, a District security guard. Evans filed suit to recover

her own damages, not any damages JM may have sustained. The trial court granted the District's

CR 12(b)(6) motion on Evans's claims for seduction of a child, alienation of a child's affections,

and negligent hiring, retention, supervision and/or training, and later granted summary judgment

in favor of the District on Evans's claim for negligent failure to report child abuse under RCW

26.44.030.[1]

We hold that (1) although the torts of seduction of a child and alienation of a child's

affections are viable under Washington law, the District has no vicarious liability because

Brent's conduct was done for his personal sexual gratification and therefore was outside the

---

[1] RCW 26.44.030(1) has been amended since the events of this case transpired, however, these amendments do not impact the statutory language relied on by this court. *See* Laws of 2016, Ch. 166, § 4; Laws of 2013, ch. 23, § 42-43. Accordingly, we refrain from including the word "former" before RCW 26.44.030.

scope of his employment as a matter of law; (2) the District was entitled to summary judgment on the alleged failure to report child abuse under RCW 26.44.030 because there was no genuine issue of material fact that District employees, other than the perpetrator, had no reasonable cause to believe that JM had suffered child abuse, but (3) the trial court erred in dismissing Evans's negligent hiring, retention, supervision and/or training claims under CR 12(b)(6) because the District potentially owed a duty to Evans.

Accordingly, we affirm the trial court's CR 12(b)(6) order on the claims for seduction of a child and alienation of a child's affections and summary judgment order on the failure to report child abuse. But we reverse the trial court's CR 12(b)(6) order on the negligent hiring, retention, supervision and/or training claims.

FACTS

*Complaint*

Evans filed a complaint against the District, seeking to recover for her personal damages. JM was not included as a plaintiff in the lawsuit, and Brent was not named as a defendant.

Evans alleged that Brent, an adult security guard at Tacoma's Science and Math Institute (SAMI), sexually groomed and had a sexual relationship with JM, who was a student at SAMI and under 18 years old at the time. Evans alleged that Brent and JM had exchanged thousands of text messages and that Brent had forced JM to send him sexual and nude pictures, had statutorily raped JM, and had impregnated JM. Evans also alleged that several District staff members had observed an inappropriate relationship between JM and Brent and had failed to report the relationship or take any other action. Evans alleged that because of Brent's conduct, she no longer had a relationship with JM and the parent-child relationship had been forever damaged and destroyed.

Evans's complaint asserted numerous causes of action, including seduction of a child under RCW 4.24.020; common law negligence; negligent hiring, retention, supervision and/or training; and negligent failure to report suspected abuse under RCW 26.44.030. Evans alleged that the District was vicariously liable for the conduct of its employees.

*CR 12(b)(6) Motion to Dismiss*

The District filed a motion to dismiss each of Evans's claims with prejudice under CR 12(b)(6). The trial court granted the District's motion to dismiss Evans's claims for seduction of a child, alienation of affection,[2] and negligent hiring, training, supervision and/or retention.[3] The trial court ruled that the seduction of a child and alienation of affection claims could only be brought against the perpetrator and not against the District. For the negligent hiring, training, supervision and/or retention claim, the trial court ruled that the District owed a duty to JM as a student but not to Evans as her parent. The trial court denied the District's motion to dismiss Evans's claim for negligent failure to report child abuse under RCW 26.44.030.[4]

*Summary Judgment Motion – Duty to Report*

After the parties conducted discovery, the District filed a summary judgment motion on Evans's remaining claim for negligent failure to report child abuse. In opposition, Evans did not

---

[2] Evans did not assert a claim for alienation of affection in her complaint. However, the parties addressed this claim in the CR 12(b)(6) motion, and the trial court included it in its dismissal order.

[3] The trial court's order dismissed Evans's common law negligence claim and did not reference her claims for negligent hiring, retention, supervision and/or training. However, both parties subsequently treated the trial court's dismissal of the common law negligence claim as a dismissal of Evans's claims for negligent hiring, retention, supervision and/or training.

[4] In conjunction with the CR 12(b)(6) motion, Evans voluntarily dismissed her claims for assault, battery, negligent and intentional infliction of emotional distress, retaliation, and disparate impact discrimination.

present any evidence that the District knew before JM turned 18 that Brent and JM had a sexual relationship. However, she argued that the District knew or should have known that there was an abusive grooming/romantic relationship between Brent and JM and that District employees should have reported that relationship. In support of this assertion, Evans submitted deposition testimony from District employees and the declaration of a former SAMI student.

Carol Brouillette was JM's English teacher for the 2011-2012 school year. Brouillette stated that Brent was in her classroom "pretty often" while working as the security guard at SAMI. Clerk's Papers (CP) at 301. She characterized Brent's conduct as "hanging out in the back and talking to students and being in the way," CP at 301, and "talking and joking with a group of students" in the back of the classroom. CP at 302. Brouillette stated that Brent's conduct was not concerning, just annoying. Brouillette did not remember how long Brent would stay in the classroom or how often he was present, but she remembered that she was annoyed by Brent's conduct for a long period of time. When asked if it appeared that Brent was maintaining proper boundaries during her class, Brouillette responded that she felt that Brent's relationship with students was "informal and unprofessional but not dangerous." CP at 302.

Kristin Tinder is the assistant principal at SAMI. Tinder stated that in the fall of 2011 two teachers expressed concerns about Brent spending too much time in their classrooms. Tinder stated that she spoke to Brent about spending extended periods of time in classrooms and subsequently did not receive any other reports of Brent spending too much time in classrooms. Tinder "never had any concerns about [Brent] singling out particular students." CP at 308.

Kuammesha Moore was a classmate of JM. Moore stated in her declaration that (1) during JM's junior year at SAMI (2011-2012), "it was obvious that [Brent] had some sort of inappropriate romantic/flirtatious relationship with [JM]," CP at 334-35; (2) Brent was "always"

around JM in classes and on campus, CP at 335; (3) Brent would come into JM's English class, taught by Brouillette, where Brent would stand or sit in the back of the classroom to talk and flirt with JM for the entire class; (4) Brouillette "most definitely observed and acknowledged" Brent's presence, CP at 335; (5) it was obvious to the classroom students that Brent's attentions for JM were "inappropriate, flirtatious and appeared romantic," CP at 335; (6) students made comments to Brent about the relationship in front of Brouillette, such as "Why don't you do your job?" and "Why so much attention for [JM]?", CP at 335; and (7) she had personal knowledge that the SAMI administrators and teachers had observed Brent "exclusively talking and flirting" with JM. CP at 335.

The trial court granted summary judgment in favor of the District and dismissed Evans's claim for negligent failure to report child abuse. The trial court ruled that the District did not owe Evans, as JM's mother, a duty under RCW 26.44.030 and therefore could not be liable for failure to report.

Evans appeals the trial court's CR 12(b)(6) and summary judgment orders.

## ANALYSIS

### A. STANDARD OF REVIEW

The trial court dismissed Evans's claims for seduction of a child, alienation of affection, and negligent hiring, retention, supervision and/or training under CR 12(b)(6). CR 12(b)(6) provides a defense for the "failure to state a claim upon which relief can be granted."

We review de novo a CR 12(b)(6) order dismissing a claim. *J.S. v. Vill. Voice Media Holdings, LLC*, 184 Wn.2d 95, 100, 359 P.3d 714 (2015). We accept as true all facts alleged in the plaintiff's complaint and all reasonable inferences from those facts. *Id.* We also "may consider hypothetical facts supporting the plaintiff's claim." *FutureSelect Portfolio Mgmt., Inc.*

*v. Tremont Grp. Holdings, Inc.*, 180 Wn.2d 954, 962, 331 P.3d 29 (2014). The question is whether there are facts that conceivably could be raised that would support a legally sufficient claim. *Worthington v. WestNET*, 182 Wn.2d 500, 505, 341 P.3d 995 (2015). Dismissal under CR 12(b)(6) is appropriate only if the plaintiff cannot allege any set of facts that would justify recovery. *Id.* For instance, CR 12(b)(6) applies when the plaintiff's allegations involve some legal bar to recovery. *See J.S.*, 184 Wn.2d at 100.

The trial court granted summary judgment in favor of the District on Evans's claim for negligent failure to make a report of child abuse under RCW 26.44.030. We review a trial court's order granting summary judgment de novo, considering the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party. *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Keck*, 184 Wn.2d at 370. No genuine issue of material fact exists if the evidence is insufficient for a reasonable jury to return a verdict for the nonmoving party. *See Keck*, 184 Wn.2d at 370. "If reasonable minds can reach only one conclusion on an issue of fact, that issue may be determined on summary judgment." *Sutton v. Tacoma Sch. Dist. No. 10*, 180 Wn. App. 859, 865, 324 P.3d 763 (2014).

When seeking summary judgment, the initial burden is on the moving party to show there is no genuine issue of material fact. *Elcon Constr., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 169, 273 P.3d 965 (2012). Once the moving party has made such a showing, the burden is on the nonmoving party to set forth specific facts that rebut the moving party's contentions and indicate a genuine issue of material fact. *Id.*

B.      SEDUCTION/ALIENATION OF AFFECTIONS OF A CHILD

Evans alleges two related causes of action: seduction of a child and alienation of a child's affections. She argues that the allegations in her complaint are sufficient to show that Brent committed both torts and that the District is vicariously liable for his conduct under respondeat superior principles. We hold that the torts of seduction of a child and alienation of a child's affections are viable under Washington law, but that the District has no vicarious liability because Brent's conduct was done for his personal sexual gratification and therefore was outside the scope of his employment as a matter of law.

1.    Seduction of a Child

RCW 4.24.020 states that "[a] father or mother, may maintain an action as plaintiff for the seduction of a child." The District acknowledges a cause of action under RCW 4.24.020, but it contends that the claim can be asserted only against the perpetrator of the seduction. The District argues that because it was not the perpetrator, it cannot be liable for the seduction of JM.

The District is correct that it cannot be liable under RCW 4.24.020 based on its *own* conduct, and Evans does not argue otherwise. Instead, Evans argues that the District is vicariously liable for *Brent's* conduct under respondeat superior principles. This issue is addressed below.

2.    Alienation of a Child's Affections

Division One of this court recognized a common law cause of action for alienation of a child's affections in *Strode v. Gleason*, 9 Wn. App. 13, 15-20, 510 P.2d 250 (1973). The District argues that the tort of alienation of affections has been abolished in all its forms in Washington. The District relies on *Wyman v. Wallace*, in which the Supreme Court held that actions for alienation of a *spouse's* affections were abolished in Washington. 94 Wn.2d 99, 105, 615 P.2d

7

452 (1980). The District also cites to two later cases that dismissed claims for alienation of a spouse's affections based on *Wyman*. *Lund v. Caple*, 100 Wn.2d 739, 745-47, 675 P.2d 226 (1984); *Lien v. Barnett*, 58 Wn. App. 680, 683-85, 794 P.2d 865 (1990).

These cases do not support the District's argument that the common law claim for alienation of a child's affections has been abolished. The Supreme Court in *Wyman* expressly noted that the case did "not raise the related issue of the continued vitality of actions for alienation of a child's affections." 94 Wn.2d at 105 n.2. And in *Babcock v. State*, the Supreme Court later noted that it had not yet had occasion to recognize a cause of action for alienation of a child's affections, but did not suggest that the cause of action had been abolished. 112 Wn.2d 83, 107-08, 768 P.2d 481 (1989), *modified on recons.*, 116 Wn.2d 596, 809 P.2d 143 (1991). Instead, the court stated that Washington courts "repeatedly" had relied on the elements listed in *Strode* in considering such claims. *Id.* at 107.

Further, *Strode* has never been overruled. After *Wyman*, *Lund* and *Lien*, Division One recognized the ongoing validity of the cause of action for alienation of a child's affections. *Waller v. State*, 64 Wn. App. 318, 338-39, 824 P.2d 1225 (1992). The court in *Waller* referred to the cause of action as both "alienation of affections of a minor child" and "malicious interference with the parent-child relationship." *Id.* at 338; *see also Grange Ins. Ass'n v. Roberts*, 179 Wn. App. 739, 765, 320 P.3d 77 (2013) (recognizing claim for "tortious interference with a parent-child relationship").

In the absence of any contrary authority, we hold that a cause of action for alienation of a child's affection continues to be viable under Washington law.

The District does not argue that Evans's complaint fails to allege facts that could support a claim for alienation of JM's affections against *Brent*. The District argues that the complaint

does not allege *the District* engaged in any conduct that would support an alienation of affection claim. However, as with the seduction claim, the District still is potentially liable under a vicarious liability theory for alienation of JM's affections based on Brent's conduct. This issue is discussed below.

### 3. No Vicarious Liability for Sexual Relationship

Evans argues that the District is liable for seduction of a child and alienation of a child's affections based on respondeat superior principles. We hold that the District cannot be held vicariously liable because Brent's conduct was done for his personal sexual gratification and therefore was outside the scope of his employment as a matter of law.

Under the rule of respondeat superior, an employer is vicariously liable to third parties for its employee's torts committed within the scope of employment. *Robel v. Roundup Corp.*, 148 Wn.2d 35, 53, 59 P.3d 611 (2002). An employee is within the scope of employment if he or she is (1) engaged in the performance of duties required by his employment contract or specifically directed by the employer – i.e., fulfilling his or her job functions, or (2) engaged in the furtherance of the employer's interests. *Id.* In applying this test, we focus on the benefit to the employer of the employee's liability-causing conduct. *Dickinson v. Edwards*, 105 Wn.2d 457, 467, 716 P.2d 814 (1986).

On the other hand, conduct not performed in furtherance of the employer's business is outside the scope of employment. *Thompson v. Everett Clinic*, 71 Wn. App. 548, 553, 860 P.2d 1054 (1993). This includes conduct involving the employee's "wholly personal motive" and "solely personal objectives or desires." *Id.* "Where the employee steps aside from the employer's purposes in order to pursue a personal objective of the employee, the employer is not vicariously liable." *Niece v. Elmview Grp. Home*, 131 Wn.2d 39, 48, 929 P.2d 420 (1997).

When an employee's conduct involves a personal objective unrelated to the employer's business, that conduct is outside the scope of employment even if the employee's position provides the opportunity for his or her wrongful conduct. *Bratton v. Calkins*, 73 Wn. App. 492, 498, 500-01, 870 P.2d 981 (1994) (holding that a teacher's sexual relationship with a student was outside the scope of employment even though his position as a teacher provided the opportunity for his wrongful conduct toward a student). Similarly, that the employee may appear to be acting within the scope of his or her authority does not support vicarious liability. *C.J.C. v. Corp. of the Catholic Bishop of Yakima*, 138 Wn.2d 699, 719-20, 985 P.2d 262 (1999) (holding that two priests' sexual molestation of an altar boy was outside the scope of their employment even though they were acting within their authority from the victim's perspective).

Whether an employee's conduct is within the scope of employment generally is a factual question. *Michael v. Laponsey*, 123 Wn. App. 873, 876, 99 P.3d 1254 (2004). However, "certain fact patterns may, as a matter of law, relieve the employer of liability." *Thompson*, 71 Wn. App. at 552.

Based on these rules, Washington courts uniformly have held as a matter of law that an employee's intentional sexual misconduct is not within the scope of employment. *C.J.C.*, 138 Wn.2d at 718-20 (priests sexually molested an altar boy); *Niece*, 131 Wn.2d at 42, 53-59 (staff member at a group home sexually assaulted a disabled woman); *Smith v. Sacred Heart Med. Ctr.*, 144 Wn. App. 537, 543, 184 P.3d 646 (2008) (nursing assistant at hospital engaged in sexual activity with former psychiatric patients); *Bratton*, 73 Wn. App. at 498-501 (teacher engaged in a sexual relationship with a student); *Thompson*, 71 Wn. App. at 550-53 (staff physician at clinic engaged in sexual activity with patients). The Supreme Court stated in *C.J.C.*,

> Following an extended discussion, we concluded in *Niece* that neither current Washington case law nor considerations of public policy favor the imposition of

respondeat superior or strict liability for an employee's intentional sexual misconduct.

138 Wn.2d at 718-19.

*Bratton* involved facts similar to those here. In that case, a high school student had a sexual relationship with a man who had been her junior high school teacher and was her high school softball coach. 73 Wn. App. at 493. She sued the teacher and the school district. *Id.* The trial court initially granted summary judgment in favor of the school district, ruling as a matter of law that a sexual relationship between a teacher and student is not within the scope of a teacher's employment. *Id.* The trial court later changed its ruling and found that the sexual relationship was within the scope of employment. *Id.* at 500.

Division Three of this court reversed the trial court and held that the school district was entitled to summary judgment. *Id.* at 500-03. The court stated:

> A sexual relationship between a teacher and a student does not benefit the employer and is not within a teacher's scope of employment. . . . A personally motivated sexual relationship between a teacher and a student does not further the employer's interest. The relationship was the result of [the teacher's] wholly personal motives and was done solely to gratify his personal objectives and desires. Even if his employment provided the opportunity for the wrongful acts, his intentional tortious actions should not be attributable to the school district.

*Bratton*, 73 Wn. App. at 500-01 (internal citations omitted). The same analysis applies to a sexual relationship between a high school security guard and a student.

Evans argues that there is no rule providing that intentional or criminal conduct always is outside the scope of employment, citing *Robel*, 148 Wn.2d at 52-53. The Supreme Court in *Robel* disagreed that an intentional tort was outside the scope of employment as a matter of law. *Id.* at 52-53. Instead, the court confirmed that an employee's conduct must be intentional or criminal and outside the scope of employment to defeat vicarious liability. *Id.* at 53.

But the court in *Robel* did acknowledge an absolute rule for sexual misconduct: "[T]his court has also determined that, where an employee's acts are directed toward personal sexual gratification, the employee's conduct falls outside the scope of his or her employment." *Id.* at 54. The court referred to conduct involving personal sexual gratification as "an exceptional circumstance that could have taken the conduct outside the scope of their employment." *Id.*

Here, Evans's complaint alleged that Brent had a sexual relationship with, raped, and impregnated JM. The complaint alleged that because of Brent's seduction of JM, Evans's relationship with her daughter has been destroyed. There is no question that the alleged acts involved sexual misconduct and Brent's personal sexual gratification, and were not done to fulfill his job functions or in furtherance of the District's interests. There are no allegations, reasonable inferences or even hypothetical facts under which Brent's sexual relationship with JM would be within the scope of his employment as a security guard. Therefore, the District cannot be vicariously liable for Brent's conduct as a matter of law.

We hold that the trial court did not err in dismissing Evans's claims for seduction of a child and alienation of a child's affections under CR 12(b)(6).

C.     NEGLIGENT FAILURE TO REPORT CHILD ABUSE

Evans argues that she has a cause of action against the District under RCW 26.44.030 for failing to report JM's sexual abuse. The District argues that (1) Evans cannot bring a cause of action pursuant to RCW 26.44.030 because she is not within the class of individuals to be protected by the statute, (2) the District is not subject to liability because only District employees and not the District itself are mandatory reporters, and (3) there was insufficient evidence to trigger any mandatory duty to report any alleged child abuse. We hold that RCW 26.44.030 gives rise to an implied cause of action for parents and the District can be vicariously liable for

its employees' failure to report child abuse, but that Evans failed to present a genuine issue of fact that District employees had reasonable cause to believe that JM had suffered abuse.

1.   Parent's Cause of Action Under RCW 26.44.030

Evans argues that she has an implied cause of action under RCW 26.44.030 to recover for her own injuries caused by the District's failure to report JM's abuse.  We agree.

RCW 26.44.030(1)(a) requires certain professionals, including professional school personnel, who have "reasonable cause to believe that a child has suffered abuse or neglect," to report the suspected abuse or neglect to DSHS or the proper law enforcement agency.  RCW 26.44.020(1) defines "[a]buse or neglect" to include sexual abuse and exploitation.

In *Beggs v. Department of Social and Health Services*, the Supreme Court held that RCW 26.44.030 implied a civil cause of action against a mandatory reporter who fails to report suspected abuse.  171 Wn.2d 69, 77-78, 247 P.3d 421 (2011).  The court applied the *Bennett* test to determine whether a cause of action could be implied from the statute:

> "[F]irst, whether the plaintiff is within the class for whose 'especial' benefit the statute was enacted; second, whether legislative intent, explicitly or implicitly, supports creating or denying a remedy; and third, whether implying a remedy is consistent with the underlying purpose of the legislation."

*Id.* at 77 (quoting *Bennett v. Hardy*, 113 Wn.2d 912, 920-21, 784 P.2d 1258 (1990).  The court held that child abuse victims are within the class for whose special benefit the legislature enacted RCW 26.44.030, the statute implicitly supported a civil remedy, and an implied cause of action is consistent with the statute's underlying purpose.  *Beggs*, 171 Wn.2d at 77-78.

But *Beggs* addressed the existence of an implied cause of action against a mandatory reporter based on the *abuse victim's* injury.  *Id.* at 77.  In *Beggs*, the plaintiffs were the estate of the deceased child victim and his siblings.  *Id.* at 74.  The issue here is whether a parent has a

cause of action under RCW 26.44.030 for her *own* injury independent of injury to her child –

here, the destruction of Evans's relationship with her child. This is an issue of first impression.

To determine whether Evans has a cause of action under RCW 26.44.030, we must apply

the *Bennett* factors. The first question is whether Evans, as a parent of a student, is within the

"class for whose 'especial' benefit the statute was enacted." *Bennett*, 113 Wn.2d at 920. There

is no express statutory language that addresses a cause of action for parents under RCW

26.44.030. But the declaration of purpose for chapter 26.44 RCW states in part:

> The Washington state legislature finds and declares: *The bond between a child and his or her parent, custodian, or guardian is of paramount importance, and any intervention into the life of a child is also an intervention into the life of the parent, custodian, or guardian.*

RCW 26.44.010 (emphasis added). This portion of the declaration of purpose demonstrates that

the legislature considered parents individually and the family unit as a whole when implementing

the mandatory reporting statute.

In *Tyner v. Department of Social and Health Services*, the Supreme Court addressed the

first *Bennett* prong in determining whether a cause of action exists for a parent under RCW

26.44.050, which creates a duty to investigate reported child abuse. 141 Wn.2d 68, 76-80, 1 P.3d

1148 (2000). The court relied on the declaration of purpose in RCW 26.44.010 in holding that

the investigation statute was enacted for the special benefit of parents as well as children. *Id.* at

78. The court stated:

> [T]he Legislature has recognized the importance of the family unit and the inextricable link between a parent and child. . . . The procedural safeguards of RCW 26.44.050 protect both children and family members; children are protected from potential abuse and needless separation from their families and family members are protected from unwarranted separation from their children.

*Id.* at 79.

If the investigation statute was enacted for the special benefit of parents, it is logical to conclude that the mandatory reporting statute also was enacted for the special benefit of parents. Therefore, RCW 26.44.030 satisfies the first prong of the *Bennett* test.

The second *Bennett* question is whether legislative intent, explicitly or implicitly, supports creating or denying an implied cause of action. *Bennett*, 113 Wn.2d at 920. The statute is silent on this issue. However, as recognized in *Beggs*, we can assume that the legislature is aware of the doctrine of implied statutory causes of action, even when the statute is silent. 171 Wn.2d at 78. And as recognized in *Beggs*, chapter 26.44 RCW provides immunity from civil liability in certain cases, which implies that civil liability can exist under the statute. *Id.* at 78. Because RCW 26.44.030 imposes a duty to report suspected child abuse for certain professionals, chapter 26.44 RCW supports an implied cause of action against a professional for the failure to fulfill that duty. *Beggs*, 171 Wn.2d at 78.

The third *Bennett* question is whether implying a remedy is consistent with the underlying purpose of RCW 26.44.030. 113 Wn.2d at 920-21. RCW 26.44.010 states, "It is the intent of the legislature that, as a result of such [mandatory] reports, protective services shall be made available in an effort to prevent further abuses, and to safeguard the general welfare of such children." Moreover, "imposing civil consequences for fail[ing] to report motivates mandatory reporters to take action to protect victims of childhood sexual abuse." *Doe v. Corp. of the President of the Church of Jesus Christ of Latter-Day Saints*, 141 Wn. App. 407, 422, 167 P.3d 1193 (2007). Holding that RCW 26.44.030 implies a private cause of action for parents against professionals who fail to report suspected child abuse furthers the underlying purpose of the statute by motivating mandatory reporters to make such reports.

Accordingly, we hold that there is an implied cause of action under RCW 26.44.030 for a parent's own injuries against a mandatory reporter who fails to report suspected abuse.

2. District Liability

The District argues that even if Evans has a cause of action under RCW 26.44.030, she cannot recover against the District because only professional school personnel – and not the District itself – are mandatory reporters. We disagree.

The District is correct that RCW 26.44.030(1)(a) lists "professional school personnel" and not school districts as mandatory reporters. But the duty to report child abuse clearly would be within a District employee's scope of employment. Therefore, even if the District cannot be directly liable for the failure to report child abuse, the District can have vicarious liability for the negligence of its employees. *Robel*, 148 Wn.2d at 53. We reject the District's argument.

3. Reasonable Cause to Believe Abuse Had Occurred

Evans argues that the trial court erred in granting summary judgment in favor of the District for negligent failure to report child abuse because there was a question of fact whether Brouillette and other District employees observed an inappropriate relationship between Brent and JM, which was enough to trigger a mandatory duty to report the conduct. We hold that Evans failed to present sufficient evidence to create a material issue of fact whether a District employee had reasonable cause to believe that JM had suffered child abuse.

RCW 26.44.030(1)(a) requires "professional school personnel" with "reasonable cause to believe that a child has suffered abuse or neglect" to report the suspected abuse to DSHS or law enforcement. " 'Reasonable cause' means a person witnesses or receives a credible written or oral report alleging abuse, including sexual contact, or neglect of a child." RCW 26.44.030(1)(b)(iii). RCW 26.44.030(1)(b)(v) incorporates the definition of "[s]exual contact"

in RCW 9A.44.010(2): "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or third party." And RCW 26.44.020(1) defines "[a]buse or neglect" as "sexual abuse, sexual exploitation, or injury of a child by any person under circumstances which cause harm to the child's health, welfare, or safety . . . or the negligent treatment or maltreatment of a child by a person responsible for or providing care to the child." The reporting requirement does not apply to abuse or neglect that occurred during childhood if it is discovered only after the child has become an adult. RCW 26.44.030(2).

Here, Evans did not present evidence that District employees had received a written or oral report alleging JM's abuse before her 18th birthday. The question is whether a District employee witnessed any "abuse" of JM before she turned 18.

Moore's declaration stated that it was "obvious" that Brent had an "inappropriate romantic/flirtatious relationship" with JM. CP at 334-35. She stated that Brent would sit or stand at the back of Brouillette's English class and flirt with JM. She also stated that Brouillette "most definitely observed and acknowledged the presence of [Brent] and [JM]." CP at 335. In addition, Moore's declaration stated that Moore knew that Tinder and other teachers had observed Brent "exclusively talking and flirting" with JM. CP at 335. Even though Moore's testimony conflicts with the declarations of Brouillette and Tinder, her testimony creates a question of fact as to whether District employees were aware that Brent was flirting with and paying inappropriate attention to JM.

However, flirting or inappropriate attention does not necessarily constitute "abuse or neglect" as defined in RCW 26.44.020(1). Here, there is no evidence that Brent was sexually abusing, exploiting or otherwise injuring JM. The type of flirting and inappropriate attention described in the record cannot be characterized as sexual abuse or exploitation. And Evans has

presented no evidence that there were any signs that Brent's flirtation and inappropriate attention had developed into a *sexual* relationship. As a result, there is no evidence that District employees had reasonable cause to believe that Brent was sexually abusing JM.

We hold that Evans did not present sufficient evidence to create a material issue of fact that a District employee had reasonable cause to believe that JM had suffered abuse or neglect as defined in RCW 26.44.020(1). Accordingly, we hold that the trial court did not err in granting summary judgment in favor of the District on this issue.

D.    NEGLIGENT HIRING, RETENTION, SUPERVISION AND/OR TRAINING

The trial court dismissed Evans's claims for negligent hiring, retention, supervision, and/or training under CR 12(b)(6), ruling that the District owed a duty under these causes of action to JM but not to Evans as JM's parent. We hold that the trial court erred in dismissing Evans's claims for negligent hiring, retention, supervision, and/or training because the District potentially owed Evans a duty as a foreseeable victim of its negligence.

1.    Legal Principles

Negligent hiring or retention and negligent supervision or training are recognized causes of action in Washington. *Scott v. Blanchet High Sch.*, 50 Wn. App. 37, 43-44, 747 P.2d 1124 (1987). An employer can be liable for negligent hiring or retention for failing to exercise ordinary care by hiring or retaining an employee known to be unfit. *Peoples v. Puget Sound's Best Chicken!, Inc.*, 185 Wn. App. 691, 701, 345 P.3d 811 (2015). Negligent hiring occurs at the time of hiring, while negligent retention occurs in the course of employment. *Peck v. Siau*, 65 Wn. App. 285, 288, 827 P.2d 1108 (1992).

Distinct from these causes of action are negligent supervision and training, for which an employer can be liable for failing to exercise ordinary care in supervising an employee. *Peoples*,

185 Wn. App. at 701. Liability arises when the employer knows or has reason to know that the employee presented a risk of danger to others. *Niece*, 131 Wn.2d at 48-49. The employer has a duty to "prevent the tasks, premises, or instrumentalities entrusted to an employee from endangering others." *Id.* at 48.

The causes of action for negligent hiring, retention, supervision and training are analytically different from vicarious liability. *Id.* These claims arise when the employee is acting outside the scope of employment. *Id.* at 51. They are based on the concept that the employer's *own* negligence is a wrong to the injured party, independent from the employer's liability for its employee's negligence imputed by the doctrine of respondeat superior. *Id.* at 48. In fact, an injured party generally cannot assert claims for negligent hiring, retention, supervision or training of an employee when the employer is vicariously liable for the employee's conduct. *LaPlant v. Snohomish County*, 162 Wn. App. 476, 479-80, 271 P.3d 254 (2011).

2. Scope of Duty

The District argues that even if it could be liable for negligent hiring, retention, supervision and/or training of Brent, its duty under these causes of action was only to its students and not to the parents of students. We disagree.

a. Foreseeable Victims

An employer's duty relating to the hiring, retention, supervision and training of employees is owed to "foreseeable victims." *Niece*, 131 Wn.2d at 48; *see also Smith*, 144 Wn. App. at 544; *Betty Y. v. Al-Hellou*, 98 Wn. App. 146, 149, 988 P.2d 1031 (1999). "[F]oreseeability requires that the alleged harm fall within the general field of danger." *Smith*, 144 Wn. App. at 544. Foreseeability typically is a question of fact. *Christen v. Lee*, 113 Wn.2d 479, 492, 780 P.2d 1307 (1989).

b. Distinguishing the District's Duty to Protect Students

The District relies on *Jachetta v. Warden Joint Consolidated School District*, 142 Wn. App. 819, 176 P.3d 545 (2008). In that case, the parents of a student sued a school district for negligently responding to a death threat made to their son. *Id.* at 821. The court recognized that "[a] school district must protect students in its custody from reasonably anticipated dangers." *Id.* at 824. The school district admitted its duty to protect the student but denied any duty to his parents. *Id.* The court agreed, concluding that because the plaintiffs were not students, the school district had no duty to protect them. *Id.*

However, *Jachetta* did not involve allegations of negligent hiring, retention, supervision or training and instead involved a completely different type of cause of action than the allegations here. As the court in *Jachetta* noted, a school district has a well-settled duty to protect its students from reasonably foreseeable dangers. *E.g.*, *McLeod v. Grant County Sch. Dist. No. 128*, 42 Wn.2d 316, 319-20, 255 P.2d 360 (1953); *Kok v. Tacoma Sch. Dist. No. 10*, 179 Wn. App. 10, 18, 317 P.3d 481 (2013); *J.N. v. Bellingham Sch. Dist. No. 501*, 74 Wn. App. 49, 57, 871 P.2d 1106 (1994); *Peck*, 65 Wn. App. at 292; *Scott*, 50 Wn. App. at 44. This duty is based on the special custodial relationship between the school and the students. *McLeod*, 42 Wn.2d at 319-20. "[A] school district has the power to control the conduct of its students while they are in school or engaged in school activities, and with that power goes the responsibility of reasonable supervision." *Peck*, 65 Wn. App. at 292. Significantly, Evans did not allege any claim in her complaint based on the District's duty to protect JM.

Evans's claims for negligent hiring, retention, supervision and/or training are based on the employment relationship between the District and its security guard employee, not any relationship between the District and the student victim. And the District's duty for these claims

is to *control* the employee, not to *protect* the student victim. A duty to protect a potential victim from foreseeable harm based on a special relationship with that person is fundamentally different than the duty to control a potential perpetrator based on an employment relationship with that person. *See Niece*, 131 Wn.2d at 52 (distinguishing between a nursing home's duty to protect its patients and duty to control its employees).

*Peck* and *Scott* demonstrate in the school context that a school district's duty to protect students is different than its duty regarding the hiring, retention, supervision or training of employees. In both cases, the courts analyzed separately the duty to supervise a student and a duty to hire/retain and supervise a teacher. *Peck*, 65 Wn. App. at 292, 294; *Scott*, 50 Wn. App. at 43-44. Because of this difference in the type of claims and causes of action, *Jachetta* is inapplicable here.

          c.    Parent of Student as Foreseeable Victim

As stated above, an employer's duty relating to the hiring, retention, supervision and training of employees is owed to "foreseeable victims." *Niece*, 131 Wn.2d at 48. Therefore, the test under CR 12(b)(6) is whether Evans could show under any set of facts, including hypothetical facts, that she – not just JM – was a foreseeable victim of Brent's conduct. *FutureSelect*, 180 Wn.2d at 962.

Here, Evans's allegations in her complaint regarding these claims are minimal. She alleges without any detail negligent hiring, retention, supervision and/or training and we must assume that this allegation is true. She also alleges that because of Brent's seduction of JM, her relationship with JM has been damaged and destroyed. Again, we must assume that this allegation is true. And under CR 12(b)(6), we must assume that the negligent hiring, retention, supervision and/or training caused the damage to Evans's relationship with JM.

Given these assumptions, we hold that it is possible to conceive of facts under which it would be foreseeable to the District that if Brent was engaging in sexual conduct with a student, that conduct might harm the parent's relationship with that student. The notion that a parent might suffer harm in this situation is not so extraordinary that we can say as a matter of law that such harm is unforeseeable under any circumstances.

Accordingly, we hold that the trial court erred in dismissing Evans's negligent hiring, retention, supervision and/or training claims under CR 12(b)(6).

## CONCLUSION

We affirm the trial court's CR 12(b)(6) order on Evans's seduction of a child and alienation of a child's affections claims and the trial court's summary judgment order on Evans's failure to report child abuse claim. But we reverse the trial court's CR 12(b)(6) dismissal of Evans's negligent hiring, retention, supervision and/or training claims. We remand for further proceedings consistent with this opinion.

MAXA, J.

We concur:

WORSWICK, J.

BJORGEN, C.J.