**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION  II**

| | |
|---|---|
| VAN B. HICKS, | No.  55014-8-II |
| Appellant/Cross-Respondent, | Consolidated with<br>No.  55554-9-II and<br>No.  55654-5-II |
| v. | |
| KLICKITAT COUNTY SHERIFF'S OFFICE, and SHIRLEY DeARMOND, | PUBLISHED OPINION |
| Respondents, | |
| DEPARTMENT OF SOCIAL AND HEALTH SERVICES, | |
| Respondent/Cross-Appellant. | |
| VAN B. HICKS, | |
| Appellant, | |
| v. | |
| KLICKITAT COUNTY SHERIFF'S OFFICE, | |
| Defendant, | |
| DEPARTMENT OF SOCIAL AND HEALTH SERVICES, and SHIRLEY DeARMOND, | |
| Respondents. | |
| VAN B. HICKS, | |
| Appellant, | |
| v. | |

No. 55014-8-II consol. w/ 55554-9-II & 55654-5-II

| KLICKITAT COUNTY SHERIFF'S OFFICE, | |
| --- | --- |
| Respondent, | |
| DEPARTMENT OF SOCIAL AND HEALTH SERVICES, and SHIRLEY DeARMOND, | |
| Defendants. | |

LEE, J. — Van B. Hicks sued the Klickitat County Sheriff's Office (KCSO), Department of Social and Health Services (DSHS), and social worker Shirley DeArmond for the negligent investigation of a child abuse report involving four-year-old F.H.[1] Hicks also sued DSHS for the negligent retention of DeArmond. On summary judgment, the superior court dismissed the negligent investigation claim but denied dismissal of the negligent retention claim. Hicks appeals the superior court's grant of summary judgment dismissal of his negligent investigation claim. DSHS cross-appeals the superior court's denial of summary judgment dismissal of Hicks' negligent retention claim.

We hold that the superior court properly granted summary judgment dismissal of the negligent investigation claim but erred in denying summary judgment dismissal of the negligent retention claim. Accordingly, we affirm the summary judgment dismissal of the negligent investigation claim, reverse the denial of summary judgment dismissal of the negligent retention claim, and remand to the superior court to enter summary judgment in favor of DSHS dismissing the negligent retention claim.

---

[1] We use initials in this opinion to protect the minor's identity.

No. 55014-8-II consol. w/ 55554-9-II & 55654-5-II

FACTS

A.    INVESTIGATION

Hicks and his former spouse, Chelsey Moss, have two children, P.H. and F.H.  In 2012, Hicks and Moss were separated and informally shared custody of the children.  At that time, P.H. was seven years old and F.H. was four years old.  Moss told the family's therapist that she believed Hicks had sexually abused F.H.  The therapist reported these suspicions to DSHS.

DSHS notified KCSO about the report they had received.  DSHS social worker DeArmond and Sergeant Erik Anderson of KCSO met with Moss at her residence and spoke with her about her concerns.  On a later date, DeArmond interviewed the children while Sergeant Anderson recorded the interview.  In response to questions from DeArmond, F.H. said that Hicks wanted F.H. to see his stiff penis, that Hicks touched his penis to F.H.'s genitals, and that Hicks touched his stiff penis to F.H.'s chin.  F.H. also said that Hicks touched both F.H. and P.H.  P.H. denied any sexual abuse by Hicks.

After Hicks was arrested, Sergeant Anderson prepared a probable cause affidavit based on the interviews.  When deposed, Sergeant Anderson testified that he created the probable cause affidavit independently, based on his own recollection of the interviews with the children. Sergeant Anderson also testified that it was solely his decision to forward the affidavit of probable cause to the prosecutor for review.

B.    CRIMINAL CHARGE

The Klickitat County Prosecutor charged Hicks with first degree child molestation.  Before filing the information, the prosecutor did not review any DSHS documents but did review Sergeant

3

No. 55014-8-II consol. w/ 55554-9-II & 55654-5-II

Anderson's summary of the interviews with the children. The superior court reviewed the information, motion for an order determining existence of probable cause, and probable cause declaration before determining that there was probable cause to believe that Hicks committed first degree child molestation. The superior court issued sexual assault protection orders prohibiting Hicks from contacting Moss and their children pursuant to former RCW 7.90.150(1)(a) (2006).

DeArmond continued meeting with Moss and entering notes in the DSHS file. DSHS issued a finding of "[f]ounded"[2] for the sexual abuse allegations against Hicks. Clerk's Papers (CP) at 559. Hicks appealed the finding.

DSHS assigned the appeal to a different social worker, Berta Norton. Norton reviewed the children's interviews and found that the interviews included leading questions. Norton concluded that the sexual abuse allegations were "unfounded."[3] CP at 567 (capitalization omitted).

The prosecutor received DSHS's updated "unfounded" finding and moved to dismiss the child molestation charge against Hicks. The superior court granted the motion and dismissed the criminal charges against Hicks. The superior court also lifted the no-contact orders prohibiting Hicks from contacting his children.

---

[2] "Founded" is a determination following an investigation that "based on available information, it is more likely than not that child abuse or neglect did occur." RCW 26.44.020(14).

RCW 26.44.020 was amended in 2013, 2018, 2019, 2021, and 2022. However, no substantive changes were made affecting this opinion. Therefore, we cite to the current statute.

[3] "Unfounded" is a determination following an investigation that "available information indicates that, more likely than not, child abuse or neglect did not occur, or that there is insufficient evidence for [DSHS] to determine whether the alleged child abuse did or did not occur." RCW 26.44.020(29).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 55014-8-II consol. w/ 55554-9-II & 55654-5-II

C.      CIVIL SUIT

Hicks sued DSHS, DeArmond, and KCSO for negligent investigation, negligence, tortious interference with a parent-child relationship, and negligent infliction of emotional distress. Hicks' amended complaint also included a negligent retention claim against DSHS. The amended complaint alleged that "[a]t all times material, Defendant's agents and employees were acting within the scope and course of his or her employment." CP at 66.

The litigation revealed that DeArmond had a history of misconduct in child abuse investigations and that DSHS had received several complaints about her. John C. Yuille, Ph.D., R. Psych. evaluated DeArmond's interview with F.H. and concluded that the interview was

> one of the poorest quality interviews of a pre-school age child that I have seen in almost three decades of reviewing child interviews. This is an example of how NOT to conduct an investigative interview of a child. It is impossible to evaluate the allegations: the quality of the interview is so poor and the interviewing so leading that there is no information of reliable quality to evaluate.

CP at 707. Additionally, DeArmond's daughter was friends with Moss, and DeArmond's granddaughter and Moss's children often played together. DeArmond's granddaughter was present at Moss's home on the day that DeArmond and Sergeant Anderson first contacted Moss about the sexual abuse allegations. DeArmond advised her supervisor of the potential conflict of interest and was advised to remain on the case.

DSHS and KCSO moved for summary judgment. As relevant to this appeal, DSHS and KCSO argued that the negligent investigation claim should be dismissed because no "harmful placement decision" was made. DSHS also argued that the negligent retention claim should be dismissed because DeArmond acted within the scope of her employment at all times.

5

No. 55014-8-II consol. w/ 55554-9-II & 55654-5-II

The superior court granted summary judgment and dismissed all claims except the "negligent supervision/retention" claim against DSHS.[4] CP at 665. DSHS moved for reconsideration of the order denying summary judgment on the negligent retention claim, and the superior court denied its motion. Hicks moved for reconsideration of the order granting summary judgment on the negligent investigation claim, and the superior court denied his motion.

D. PROCEDURAL HISTORY ON APPEAL

DSHS and DeArmond sought discretionary review before this court regarding the remaining negligent retention claim. We granted discretionary review.

Hicks moved for review before our Supreme Court regarding the dismissal of the negligent investigation claim. Our Supreme Court transferred Hicks' motion for review to this court. We consolidated the appellate matters for review.

ANALYSIS

A. STANDARD OF REVIEW

We review summary judgment orders de novo. *W.M. v. State*, 19 Wn. App. 2d 608, 621, 498 P.3d 48 (2021). Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 621; CR 56(c). A genuine issue of material fact exists if reasonable minds could disagree on the conclusion of a factual issue that controls the outcome of the litigation. *Sartin v. Estate of McPike*, 15 Wn. App.

---

[4] The record is clear that Hicks did not allege a negligent supervision claim against DSHS in his amended complaint and that the superior court meant to dismiss all claims except the "negligent retention" claim against DSHS. Thus, the inclusion of "supervision" appears to be a scrivener's error.

6

No. 55014-8-II consol. w/ 55554-9-II & 55654-5-II

2d 163, 172, 475 P.3d 522 (2020), *review denied*, 196 Wn.2d 1046 (2021). We review all facts and reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. *Id.*

"The party moving for summary judgment bears the initial burden to show there is no genuine issue of material fact." *Id.* If a moving defendant shows that there is an absence of evidence to support the plaintiff's case, then the burden shifts to the plaintiff to present specific facts that reveal a genuine issue of material fact. *Id.* "Summary judgment is appropriate if a plaintiff fails to show sufficient evidence that creates a question of fact about an essential element on which he or she will have the burden of proof at trial." *Id.*

B.      NEGLIGENT INVESTIGATION

Hicks argues that the superior court erred by granting summary judgment dismissal of his negligent investigation claim. Specifically, Hicks contends that "harmful placement" is not an essential element of the tort of negligent investigation; his arrest, incarceration, and sexual assault protection order constituted a "harmful placement;" and the sexual assault protection order was not a superseding intervening cause that breaks the chain of proximate cause. Hicks' argument fails because negligent investigation claims require a "harmful placement" and Hicks' arrest, incarceration, and sexual assault protection order did not constitute a "harmful placement."

1.      Harmful Placement Is Required For Negligent Investigation Claims

Hicks argues that "harmful placement" is not an essential element of the tort of negligent investigation. While Hicks frames his argument as a contention that "harmful placement" is

7

No. 55014-8-II consol. w/ 55554-9-II & 55654-5-II

merely "part of the inquiry into proximate cause," Hicks is in effect arguing that "harmful placement" is not required for negligent investigation claims. Br. of Appellant at 13. We disagree.

There is no general tort claim for negligent investigation against the State. *McCarthy v. Clark County*, 193 Wn. App. 314, 328-29, 376 P.3d 1127, *review denied*, 186 Wn.2d 1018 (2016). However, a cause of action may be implied when a statute "provides protection to a specified class of persons but creates no remedy." *Bennett v. Hardy*, 113 Wn.2d 912, 920, 784 P.2d 1258 (1990). To determine if an implied cause of action exists, Washington courts engage in a three-part inquiry:

> [F]irst, whether the plaintiff is within the class for whose "especial" benefit the statute was enacted; second, whether legislative intent, explicitly or implicitly, supports creating or denying a remedy; and third, whether implying a remedy is consistent with the underlying purpose of the legislation.

*Id.* at 920-21 (quoting *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 823 F.2d 1349, 1353 (9th Cir. 1987)).

Our Supreme Court has applied this three-part test to RCW 26.44.050[5] and held that there is an implied cause of action against the State for negligent investigation of child abuse allegations. *Tyner v. Dep't of Soc. & Health Servs.*, 141 Wn.2d 68, 78-82, 1 P.3d 1148 (2000). RCW 26.44.050 "creates an actionable duty that flows from DSHS to both children and parents who are harmed by DSHS negligence that results in wrongfully removing a child from a nonabusive home, placing a

---

[5] RCW 26.44.050 provides in relevant part that "[u]pon the receipt of a report alleging that abuse or neglect has occurred, the law enforcement agency or the department must investigate and provide the protective services section with a report in accordance with chapter 74.13 RCW, and where necessary to refer such report to the court."

RCW 26.44.050 was amended in 2013, 2018, and 2020. However, no substantive changes were made affecting this opinion. Therefore, we cite to the current statute.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

child into an abusive home, or allowing a child to remain in an abusive home." *M.W. v. Dep't of Soc. & Health Servs.*, 149 Wn.2d 589, 597-98, 70 P.3d 954 (2003). Therefore, to prevail on a claim for negligent investigation, the plaintiff must show that the State "gathered incomplete or biased information" that resulted in "a harmful placement decision, such as *removing a child* from a nonabusive home, *placing a child* in an abusive home, or *letting a child* remain in an abusive home." *Id.* at 602 (emphasis added). This "harmful placement decision" for the child requirement is strictly applied. *McCarthy*, 193 Wn. App. at 333.

Here, Hicks invites this court to reapply the *Bennett v. Hardy* test to RCW 26.44.050 and to reconstruct an implied cause of action that has already been well established by our Supreme Court. We decline Hicks' invitation and instead follow our Supreme Court's precedent by holding that negligent investigation claims unequivocally require harmful placement decisions for the child.

2. No Harmful Placement Occurred

Hicks argues that his arrest, incarceration, and sexual assault protection orders constituted harmful placement decisions. We disagree.

"[A] no-contact order issued in criminal proceedings that is not designed to address the parent-child relationship and the child's residence" cannot satisfy RCW 26.44.050's requirement for a "harmful placement decision." *McCarthy*, 193 Wn. App. at 333. In *McCarthy*, a county law enforcement officer arrested a father for fourth degree assault after the mother reported that he had struck their child on the head. *Id.* at 319-21. The district court arraigned the father on the fourth degree assault charges and issued a no-contact order pursuant to former RCW 10.99.040(2)(a)

No. 55014-8-II consol. w/ 55554-9-II & 55654-5-II

(2000)[6] because domestic violence was involved. *Id.* at 321. The father later sued the county for negligent investigation,[7] and the trial court granted summary judgment dismissing his claim. *Id.* at 327.

On appeal, the court reviewed whether the no-contact order issued in the father's criminal proceedings could constitute a "harmful placement decision" for his negligent investigation claim. *Id.* at 330. The court examined the two other cases addressing claims for removing children from nonabusive homes and noted that both cases involved dependency proceedings specifically designed to determine whether to maintain the parent-child relationship and where the children should live. *Id.* at 332-33. The court then compared those cases to the no-contact order in McCarthy's case:

> Here, the facts are completely different. The district court's June 6, 2005 no-contact order was issued as a result of a criminal charge, not a dependency petition. The order arose from the district court's arraignment, which was designed to address the criminal charges and not the parent-child relationship. Clark County did not request any placement decision. The district court did not conduct a shelter care hearing or any similar hearing to address residency issues.

---

[6] Former RCW 10.99.040(2)(a) provided that when any person charged with or arrested for a crime involving domestic violence is released before their trial, the court may prohibit that person from having any contact with the victim.

[7] RCW 26.44.050 creates an implied cause of action for negligent investigation against law enforcement in addition to DSHS. *See Rodriguez v. Perez*, 99 Wn. App. 439, 445-46, 994 P.2d 874, *review denied*, 141 Wn.2d 1020 (2000) ("The rationale in permitting negligent investigation claims against DSHS is based on DSHS's statutory duty to investigate child abuse and the protected status of the parents and children bringing the claims. Those considerations apply equally to claims against law enforcement officers when those officers are conducting investigations pursuant to the statutory directives set forth in RCW 26.44. RCW 26.44.050 requires the appropriate law enforcement agency or DSHS to investigate a report of alleged child abuse. It is clear that the inclusion of law enforcement was intentional.")

No. 55014-8-II consol. w/ 55554-9-II & 55654-5-II

*Id.* at 333. Accordingly, the court held that the no-contact order issued in the criminal proceedings did not constitute a "harmful placement decision" for purposes of a negligent investigation claim under RCW 26.44.050. *Id.* Our Supreme Court denied review. *McCarthy v. Clark County*, 186 Wn.2d 1018, 383 P.3d 1023 (2016).

Here, Hicks argues that his arrest, incarceration, and sexual assault protection orders constituted harmful placement decisions for his negligent investigation claim. Like the no-contact order entered in *McCarthy*, Hicks' arrest, incarceration, and sexual assault protection orders were not designed to address the parent-child relationship or the child's residence. The arrest, incarceration, and sexual assault protection orders were not the results of a dependency petition or any proceedings regarding residency issues. Instead, like in *McCarthy*, the arrest and sexual assault protection orders were connected to Hicks' criminal charge. Therefore, we hold as a matter of law that the arrest, incarceration, and sexual assault protection orders cannot satisfy RCW 26.44.050's requirement for a "harmful placement decision." *See McCarthy*, 193 Wn. App. at 333. Accordingly, we hold that the superior court did not err in granting summary judgment dismissal of Hicks' negligent investigation claim.[8]

---

[8] Because Hicks' harmful placement arguments fail, his negligent investigation claim fails as a matter of law. Therefore, we do not address Hicks' argument that the sexual assault protection order was not a superseding intervening cause that breaks the chain of proximate cause for his negligent investigation claim.

11

No. 55014-8-II consol. w/ 55554-9-II & 55654-5-II

C.      NEGLIGENT RETENTION

On cross-appeal, DSHS argues that the superior court erred by denying its motion for summary judgment dismissal of Hicks' negligent retention claim. DSHS contends that, because DeArmond acted at all times within the scope of her employment, Hicks' negligent retention claim must fail as a matter of law. We agree.

Negligent retention is a recognized cause of action in Washington. *Evans v. Tacoma Sch. Dist. No. 10*, 195 Wn. App. 25, 46, 380 P.3d 553, *review denied*, 186 Wn.2d 1028 (2016). An employer can be liable for negligent retention if a plaintiff shows that the employer had knowledge of the employee's unfitness or failed to exercise reasonable care to discover unfitness before hiring or retaining the employee. *Anderson v. Soap Lake Sch. Dist.*, 191 Wn.2d 343, 356, 423 P.3d 197 (2018). Negligent retention claims generally arise when an employee is acting outside the scope of their employment. *Evans*, 195 Wn. App. at 47.[9]

Here, Hicks alleged in his amended complaint that "[a]t all times material, Defendant's agents and employees were acting within the scope and course of his or her employment." CP at 66. Hicks does not argue nor allege that DeArmond acted outside the scope of employment; rather, Hicks only argues that negligent retention claims do not require a showing that the employee acted outside the scope of their employment. Therefore, there is no genuine issue of material fact as to

---

[9] Under the doctrine of respondeat superior, an employer can be vicariously liable for its employee's torts committed *within* the scope of employment. *Evans*, 195 Wn. App. at 37. In *Evans*, the court held that claims for negligent hiring, retention, supervision, and training, which arises from conduct occurring *outside* the scope of employment, are analytically different from vicarious liability. *Id.* at 47. An injured party generally cannot assert negligent retention claims when the employer is vicariously liable for the employee's conduct. *Id.*

12

No. 55014-8-II consol. w/ 55554-9-II & 55654-5-II

whether DeArmond was acting within the scope of her employment, and Hicks' negligent retention claim fails as a matter of law.[10]

Because Hicks has failed to allege facts that show DeArmond acted outside the scope of employment, Hicks' negligent retention claim fails as a matter of law. Accordingly, we hold that the superior court erred by denying DSHS's motion for summary judgment dismissal of Hicks' negligent retention claim.[11]

CONCLUSION

Negligent investigation claims require a "harmful placement decision," and there is no evidence of a harmful placement decision with regard to the children. Negligent retention claims arise when an employee acts outside the scope of their employment, and Hicks has alleged that DSHS' employee was acting within the scope of employment. Thus, both claims fail as a matter of law. Therefore, we affirm the superior court's summary judgment dismissal of the negligent investigation claim, reverse denial of summary judgment dismissal of the negligent retention

---

[10] Even if the scope of employment issue did not mandate the dismissal of Hicks' negligent retention claim, the negligent retention claim would still fail. Hicks' negligent retention claim is rooted in the alleged negligent investigation of child abuse. Therefore, the negligent retention claim necessarily has the same limitations of the negligent investigation claim, including the requirement for a "harmful placement decision." Otherwise, the negligent retention claim would allow an end run around the carefully limited negligent investigation claim.

[11] DSHS also argues that Hicks' negligent retention claim fails because Hicks did not provide sufficient evidence that DSHS was the proximate cause for his alleged harm. Because Hicks' negligent retention claim fails as a matter of law for the reasons above, we do not address DSHS's proximate cause argument.

No. 55014-8-II consol. w/ 55554-9-II & 55654-5-II

claim, and remand to superior court to grant summary judgment dismissal of negligent retention claim.

Lee, J.

We concur:

Maxa, P.J.

Price. J.