# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Parenting and Support of J.J.S., | No. 57891-3-II |
| CHRISTY MCKINLEY, | |
| Appellant, | |
| And | |
| LARS SOMMER, | UNPUBLISHED OPINION |
| Respondent. | |

CRUSER, A.C.J. — Christy McKinley and Lars Sommer are parents to JS, who shares a last name with Sommer. When JS was born in 2018, McKinley and Sommer, who were never married, signed an acknowledgement of parentage. In 2020, McKinley petitioned Pierce County Superior Court to enter a parenting plan and child support order. After a bench trial, the court entered a final parenting plan allocating JS's residential time equally between both parents.

In 2022, citing the dispute resolution provision of the final parenting plan, McKinley moved the court to change JS's surname to Sommer-McKinley. She argued that a name change was in JS's best interest for two reasons: first, it would promote his relationship with both parents, and second, it would mitigate the difficulties that JS might face in the future if his surname was not changed. McKinley alleged that Sommer had recently begun attempting to undermine JS's relationship with McKinley by emphasizing that JS did not bear his mother's surname. McKinley

also alleged that Sommer's new wife (JS's stepmother) began holding herself out as JS's mother and that on at least one occasion, this caused an acquaintance to assume that McKinley was JS's nanny. McKinley relied on a list of factors contained in *Daves v. Nastos*, 105 Wn.2d 24, 31, 711 P.2d 314 (1985), a paternity case dealing with the application of the best interest standard when one parent wishes to change the child's name and the other parent disagrees.

The trial court denied McKinley's motion and made an oral ruling that the motion was frivolous. The court in its oral ruling expressed its view that *Daves* was not applicable in a parenting plan proceeding because *Daves* was a paternity case. Finally, it expressed that children "all the time" have different last names than their mothers, and that "we deal with it." Verbatim Rep. of Proc. (VRP) at 11. The court entered a written order stating that it did not find that a name change would be in JS's best interest.

McKinley now appeals, arguing that the trial court abused its discretion by denying her motion to change JS's surname. We agree with McKinley because the record indicates that the trial court relied on facts outside of the record and incorrectly concluded that the motion was frivolous without considering the evidence or argument made by McKinley as to JS's best interest. Accordingly, we vacate the trial court's order denying McKinley's motion to change JS's surname and remand for a new hearing on the motion. We also grant McKinley's request to remand to a different judge.

FACTS

I. PARENTING PLAN

McKinley and Sommer share a minor child together, JS, who was born in September 2018. *In re Parenting and Support of J.J.S.*, No. 84636-1-I, slip op. at 1 (Wash. Ct. App. Apr. 17, 2023)

(unpublished), https://www.courts.wa.gov/opinions/pdf/846361.pdf.[1] According to Sommer, the parties agreed at the time of JS's birth that he would share his father's surname and not his mother's.

In January 2020, McKinley petitioned Pierce County Superior Court to enter a parenting plan and child support order. In January 2022, after a six-day bench trial, the court entered a final[2] parenting plan that reflected an equal share of residential time with each parent. Paragraph 5 of the parenting plan provided that the parents were to make major decisions jointly, listing a number of types of major decisions such as health care and education, but not listing the decision of the child's name. Paragraph 6 of the parenting plan, "Dispute Resolution," listed the superior court judge who heard the case and indicated that the judge "retains jurisdiction of this case until further order." Clerk's Papers (CP) at 67.

## II. NAME CHANGE MOTION

In October 2022, the parties appeared in Pierce County District Court after McKinley petitioned to change JS's surname. The court allowed the parties to argue their positions, but determined that it did not have authority to make any ruling on the matter because the Superior Court had retained jurisdiction according to the parenting plan. It relied on paragraphs 5 and 6 of the parenting plan, governing major decisions and dispute resolution, for its determination.

---

[1] Where background facts were not located in the appellate record, we cite to the prior unpublished opinion of Division One of this court. Although unpublished opinions may not be cited as legal authority, *see* GR 14.1(c), it has long been accepted that "[t]his court may rely on unpublished opinions as evidence of the facts established in earlier proceedings in the same case or in a different case involving the same parties." *Martin v. Wilbert*, 162 Wn. App. 90, 93 n.1, 253 P.3d 108 (2011).

[2] It appears that an amended final parenting plan was entered on September 2, 2022, but that plan is not in the record.

In November 2022, McKinley brought a motion for dispute resolution in Pierce County Superior Court seeking to change JS's surname from Sommer to Sommer-McKinley.[3] McKinley cited *Daves* for its list of five non-exhaustive factors to be considered in a contested name change for a child. McKinley argued that only two factors were relevant in the case of JS: (1) the preservation and development of his relationship with each parent and (2) the difficulties that he might experience as a result of either surname.

First, McKinley argued that bearing both names would enhance JS's relationship with both parents and would mitigate damage Sommer had done to JS's relationship with McKinley when he emphasized that JS did not share a surname with McKinley. Second, McKinley argued that a hyphenated name would avoid confusion and difficulty for JS because it would mitigate the issues caused by JS's stepmother sharing the last name Sommer and holding herself out as his mother.

Sommer submitted a responsive declaration in which he argued that a name change was not in JS's best interest because JS felt attached to his name and because changing his surname would confuse JS and disconnect him from Sommer. He denied McKinley's allegations that he commented that JS was " 'not a McKinley' " and that he or his wife had suggested that JS's stepmother was his biological mother. *Id.* at 9.

In January 2023, the court heard argument on the motion. McKinley argued that promoting the child's relationship with both parents was the dispositive factor weighing in favor of changing

---

[3] Although McKinley initially styled her motion as a "Motion for Dispute Resolution" asking the court to order that the parties must cooperate to change JS's surname, the court treated it as a "Motion to Change the Child's Name" by reaching the merits of the issue and making a final ruling. CP at 1, 106. The parties refer to this as a motion to change the child's name in their appellate briefs. Therefore, although McKinley did not amend her petition, the trial court properly treated the name change issue as if it was raised in the pleadings because the opposing party impliedly consented to the issue pursuant to CR 15(b).

JS's surname to Sommer-McKinley. She posited that sharing a surname with only one parent would favor that parent's relationship over the other, where case law states that the parents' names should be considered on equal footing. She reiterated her claim that Sommer made comments, both to McKinley and to JS, stating that JS was not a McKinley and was only a Sommer, an allegation that Sommer denied. McKinley also argued that Sommer's wife of four months was holding herself out as JS's mother. She argued that JS would face difficulty in the future explaining that McKinley was his mother if they did not share a name.

Sommer responded that the McKinley name was not required to bond JS with his mother's side of the family because JS's middle name is a family name from that side. Sommer further argued that JS's name was chosen at his birth and agreed on by both parents. He also argued that case law from paternity actions should not be applied in this matter. Sommer also pointed out that McKinley did not include the name change issue in the original parenting plan petition.

The court made an oral ruling denying McKinley's motion as frivolous. The court stated that the case law relating to parentage was not germane to this question and would not be considered, and that McKinley had ample opportunity to bring the issue to the court earlier. It explained its ruling as follows:

> All right. When I saw this motion I thought, oh, my goodness this will never end. Ms. McKinley, I looked at your petition and you are a lawyer and you were in dispute at that time. You didn't ask in the petition or the multiple-day trial anything about changing the child's name.
> You signed an acknowledgment of parentage. You are a family law attorney. You know that it says now this is what you two are agreeing, you both sign it, it is the last name of this child, and you have one year to change it. This child is almost five.
> You cite a case that isn't remotely related to this case. I mean, this is not a parentage case. It's not a case where you didn't have ample opportunity during a trial to bring this issue up. You wait until the trial is over and then you are starting

a litigation again about an issue not -- I mean, and you knew that I retained jurisdiction.

And for you to say -- and you are a lawyer -- that I didn't address that, when you didn't even -- when I made it clear is that all issues related to this child should come to me and you didn't even petition for a different name in this court, I just find this amazing. I am denying your motion.

You know, children all the time have different names than their mothers. The schools deal with it. Coaches deal with it. Everywhere we deal with it. So I find your motion frivolous and I am denying it.

VRP at 10-11. The court entered an order in which it concluded, "The court does not find it is in the child's best interest to change his name." CP at 106.

McKinley appeals.

DISCUSSION

I. DENIAL OF NAME CHANGE MOTION

McKinley argues that the trial court erred by failing to consider the best interest of the child when it refused to change JS's surname. Sommer responds that the trial court applied the correct standard and that McKinley failed to meet her burden to show that a name change was in JS's best interest. We agree with McKinley and vacate the trial court's ruling because the record does not indicate that the trial court considered the evidence or argument when it denied McKinley's motion.

A. LEGAL PRINCIPLES

*1. Standard of Review*

We review a trial court's decisions relating to a parenting plan for abuse of discretion. *In re Marriage of Katare*, 175 Wn.2d 23, 35, 283 P.3d 546 (2012). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. *Id.* A decision is manifestly unreasonable if no reasonable person would reach the trial court's

6

conclusion. *In re Welfare of M.R.*, 200 Wn.2d 363, 376, 518 P.3d 214 (2022). A decision is based on untenable grounds if the trial court "relied on facts not supported by the record or on an incorrect legal standard." *Id.*

If we find that the trial court abused its discretion, we then review the trial court's error for prejudice. *Id.* We will reverse only if it is reasonably probable that the error materially affected the outcome. *Id.*

*2. Name Change Law*

Generally, a parent wishing to change the name of their child may do so by petitioning the district court pursuant to RCW 4.24.130(1).[4] The name change statute gives the court discretion when considering a name change petition, but does not explain what the court should consider. *Id.* Accordingly, we turn to case law to assist us with determining the trial court's obligations in considering such a request.

The leading case involving a disputed request to change the name of a minor child is *Daves v. Nastos*, 105 Wn.2d 24, 711 P.2d 314 (1985). In that case, the child's father initially denied paternity and, during the parentage trial, requested that the child's name be changed from her mother's name, Daves, to her father's name, Nastos. *Id.* at 26. The trial court granted the father's request, citing the paternity statute, former RCW 26.26.130 (1983), for its authority to change the child's name. *Id.* The supreme court held that the paternity statute did not authorize a name change, but that a name change could be procured in a paternity action by amending the pleadings to bring a concurrent action pursuant to RCW 4.24.130. *Id.* at 29-30. It vacated the name change order and

---

[4] We cite to the current version of RCW 4.24.130 because its recent amendments have no bearing on the analysis of this case. *See* LAWS OF 2023, ch. 34, § 1.

remanded for a hearing as to whether the child's best interest would warrant changing her surname. *Id.* at 32.

In so holding, the supreme court clarified that "a change in the child's surname should be granted only when the change promotes the child's best interests" and that the trial court must enter a finding on that issue. *Id.* at 30. It reasoned that the change of a child's surname is "a change in status having significant societal implications" and that accordingly, the child's welfare must be the court's "controlling consideration" when ruling on a contested name change request brought by a parent. *Id.*

The *Daves* court emphasized that "neither parent of a nonmarital child has a right superior to the other" in determining the child's surname. *Id.* at 31. In framing the proper inquiry for the trial court, it emphasized that both the proposed name and current name should be placed on equal footing, asking "whether the child's best interests will be served by an order directing that her name be changed to that of her father, or whether her interests will be better served by retaining her mother's maiden name." *Id.* It listed five non-exhaustive factors to be considered:

> the child's preference; the effect of the change of the child's surname on the preservation and the development of the child's relationship with each parent; the length of time the child has borne a given name; the degree of community respect associated with the present and the proposed surname; and the difficulties, harassment or embarrassment that the child may experience from bearing the present or the proposed surname.

*Id.*

Although *Daves* is a paternity case, it has been relied upon in a variety of family law contexts outside of paternity proceedings when one parent wishes to change the child's legal name and the other parent disagrees.[5]

B. APPLICATION

When the trial court dismissed the motion as frivolous, it failed to support this ruling with any reasoning or with references either to facts or to the absence of facts in the record. Troublingly, the trial court appears to have dismissed the motion based on its own assumptions rather than considering the evidence and argument before it. Additionally, its conclusion was manifestly unreasonable because no reasonable jurist would find that McKinley's position was so completely devoid of merit as to be frivolous. Thus, the trial court abused its discretion in concluding that the motion was frivolous without giving due consideration to the arguments before it.

A frivolous position is one that is either not grounded in fact or law or that was filed for an improper purpose. *See* CR 11; *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 217, 829 P.2d 1099 (1992). Here, McKinley's request to change JS's surname was grounded in fact because she presented evidence showing that (1) bearing only the surname Sommer was causing confusion for

---

[5] Although GR 14.1(c) directs that "Washington appellate courts should not, unless necessary for a reasoned decision, cite or discuss unpublished opinions," the following unpublished cases are listed for the sole purpose of demonstrating that this is a well-settled legal issue: *In re Parenting and Support of H.R.H.*, No. 46473-0-II , slip op. (Wash. Ct. App. Dec. 15, 2015) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2046473-0-II%20Unpublished%20Opinion.pdf (petition for parenting plan filed by mother, where paternity was established via acknowledgement); *In re Custody of L.Z.*, No. 46466-7-II, slip op. (Wash. Ct. App. Mar. 31, 2015) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2046466-7-II%20%20Unpublished%20Opinion.pdf (nonparental custody petition filed by mother's ex-husband); *In re Marriage of Pennington*, noted at 162 Wn. App. 1002 (2011) (unpublished) (dissolution of marriage); *Ceballos v. Saeteurn*, noted at 123 Wn. App. 1047 (2004) (unpublished) (petition to modify custody order between never-married parents); *In re Marriage of Schwary*, noted at 121 Wn. App. 1007 (2004) (unpublished) (dissolution of marriage).

those interacting with JS and his mother and stepmother, including community members who believed McKinley was JS's nanny; and (2) Sommer made comments that minimized the significance of JS's connection to his mother by emphasizing that JS did not share the last name McKinley. It was grounded in law because McKinley cited the proper authority to support a change in JS's surname and made cogent arguments for its application to the case at hand. And finally, there is no indication that McKinley's motion was filed for an improper purpose. Accordingly, no reasonable jurist could find that the motion was frivolous.

In addition, the trial court relied upon facts outside the record when reaching its conclusion. The trial court stated, "You know, children all the time have different names than their mothers. The schools deal with it. Coaches deal with it. Everywhere we deal with it. So I find your motion frivolous and I am denying it." VRP at 11. The evidence before the trial court did not include data showing how common it is for children to bear a different surname from their mothers. Nor did it include any evidence disputing McKinley's factual allegation that JS's surname caused acquaintances to assume that McKinley was JS's nanny because they did not share a name. The court disregarded McKinley's evidence on that point based on its own assumption that such confusion should simply be "deal[t] with" by all parties involved. *Id.* Accordingly, the trial court's dismissal of the motion was erroneous both because it was manifestly unreasonable and because it was based upon facts outside the record.

Although it made no finding or conclusion as to the child's best interest in its oral ruling, the trial court entered a written finding that "[t]he court does not find it is in the child's best interest to change his name." CP at 106. This is insufficient to overcome the trial court's bald refusal to consider the evidence and argument presented by McKinley.

Sommer concedes that the court made no specific finding on the *Daves* factors.[6] However, Sommer argues that we should take the absence of such a finding as a presumptive finding against McKinley, the party with the burden of proof. However, "an appellate court may imply or infer the existence of a finding of fact 'if—but only if—all the facts and circumstances in the record . . . clearly demonstrate that the omitted finding was *actually intended, and thus made*, by the trial court.' " *Dalton M, LLC v. N. Cascade Tr. Servs., Inc.*, 2 Wn.3d 36, 54, 534 P.3d 339 (2023) (quoting *In re Welfare of A.B.*, 168 Wn.2d 908, 921, 232 P.3d 1104 (2010)). Here, given the trial court's opinion that *Daves* was not "remotely related" to the issue before it because "this is not a parentage case," we cannot conclude that the trial court applied the *Daves* factors to reach its conclusion. VRP at 10.

Nor can we conclude that the trial court considered the best interest of the child in any way, even if it was not required to consider the *Daves* factors explicitly. Although the trial court may be correct that it is *common* for children to bear a different surname from their mothers, this is not dispositive of whether, *in the specific circumstances of the case at hand*, a name change was in JS's best interest. The trial court does not seem to have considered JS's specific circumstances at all, instead basing its ultimate conclusion on the assumption that JS and others should simply "deal with it." *Id.* at 11.

In considering McKinley's motion, the trial court wholly ignored the very serious allegation that Sommer and JS's stepmother held JS's stepmother out as his biological mother. Washington courts hold in high regard the parent-child bond and discourage interference with it;

---

[6] Although below, Sommer contested the application of *Daves* to the facts at issue here, the parties now agree that *Daves* provides the correct legal standard for determining if a name change is in a child's best interest.

indeed, our courts recognize a common law tort claim for alienation of a child's affection toward their parent. *See, e.g.*, *Strode v. Gleason*, 9 Wn. App. 13, 14-15, 20, 510 P.2d 250 (1973) ("We hold that a parent has a cause of action for compensatory damages against a third party who maliciously alienates the affections of a minor child."); *Evans v. Tacoma Sch. Dist. No. 10*, 195 Wn. App. 25, 36, 380 P.3d 553 (2016) ("[W]e hold that a cause of action for alienation of a child's affection continues to be viable under Washington law."). If true, the alleged conduct would be of the utmost importance in weighing whether a name change was in JS's best interest because it indicates at least some level of interference, whether malicious or not. The trial court should have taken these allegations into consideration.

We conclude that the trial court erred in failing to meaningfully consider the best interest of the child as it is required to do when ruling on a contested request to change the surname of a minor child. Prejudice is evident because of the trial court's complete failure to consider McKinley's argument. Accordingly, we vacate the trial court's order denying McKinley's name change request and remand this matter for a new hearing on the motion.

## II. REASSIGNMENT ON REMAND

McKinley asks us to remand to a different judge to avoid the appearance of unfairness or bias. Sommer asks us to disregard this argument.

Reassignment to a new judge on remand is appropriate to avoid the appearance of unfairness or bias. *In re Marriage of Muhammad*, 153 Wn.2d 795, 807, 108 P.3d 779 (2005). We may remand to a new judge where "the trial judge will exercise discretion on remand regarding the very issue that triggered the appeal and has already been exposed to prohibited information, expressed an opinion as to the merits, or otherwise prejudged the issue." *State v. McEnroe*, 181

Wn.2d 375, 387, 333 P.3d 402 (2014) (footnotes omitted). To preserve the appearance of fairness, because the trial judge has already addressed the issue that triggered this appeal, reassignment before a different judge is appropriate. *See id.*

## ATTORNEY FEES

Sommer requests attorney fees pursuant to RAP 18.9, which authorizes an award of fees when an opposing party files a frivolous appeal. A frivolous appeal is one in which, considering the entire record and resolving doubts in the appellant's favor, we are convinced that "the appeal presents no debatable issues upon which reasonable minds might differ, and that the appeal is so devoid of merit that there is no possibility of reversal." *Advocs. for Responsible Dev. v. W. Wash. Growth Mgmt. Hr'gs Bd.*, 170 Wn.2d 577, 580, 245 P.3d 764 (2010). McKinley's arguments in this appeal are not devoid of merit. Accordingly, we deny Sommer's request for attorney fees.

## CONCLUSION

We vacate the trial court's order denying McKinley's motion for name change and remand this case for a new hearing on the motion. We grant McKinley's request to reassign this matter before a different judge on remand.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

No. 57891-3-II

CRUSER, A.C.J.

We concur:

MAXA, J.

VELJACIC, J.